[No. 11797. Department One. — April 20, 1888.]

FRANK B. MARSHALL, APPELLANT, *v.* LOUIS BEYSSER ET AL., RESPONDENTS.

ADVERSE POSSESSION — PASTURAGE. — Instance of a sufficient adverse possession by pasturage within the rule laid down in *Weber* v. *Clarke*, 74 Cal. 11.

APPEAL from a judgment of the Superior Court of Calaveras County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Reddick & Solinsky*, and *Eugene N. Deuprey*, for Appellant.

*J. A. Louttit, S. D. Woods*, and *A. L. Levinsky*, for Respondents.

Hayne, C.—Action of ejectment. The plaintiff relies upon a patent from the state of California, issued March 12, 1870. He never had any possession of the land until he forcibly dispossessed the defendants, on March 23, 1884. The defendants rely upon the statute of limitations. Special issues were submitted to the jury, which answered all the questions is favor of the defendants. The court adopted the findings of the jury, and made certain additional findings of its own, and ordered judgment thereon in favor of the defendants. The plaintiff appeals from the judgment, and an order denying his motion for a new trial.

The point mainly relied on is, that the evidence is insufficient to show a five years' possession of the kind required by the statute. We think there is ample evidence to sustain the findings.

It appears that in 1873 one T. N. Beatty (the nature of whose title does not clearly appear) conveyed the land in controversy to one John Urquilux, who was one of three partners commonly known as the "Bascos," probably from their nationality. The Bascos were in possession under this deed. According to the witness Carnduff, "along in 1870–73, the Bascos had somewhere near one thousand head of cattle. . . . . The Bascos had possession in 1874. They had cattle then." It is not necessary, however, to trace the possession so far back. Five years prior to March 23, 1884, will be sufficient. And there is sufficient testimony of this.

The witness Leon Chapin testifies that he went to the ranch in January, 1877, and worked there until February or April, 1880; that he had charge of the ranch for the Bascos; that in 1876 the land was rented

to one Walker, who kept possession until 1878, and had sheep pastured on the land, and was then "out for ten months"; that witness had charge of the ranch during this ten months, being paid by the Bascos, and living on the premises; that in 1879–80 the land was rented to Walker and Willis.

Walker testifies as follows: "I rented the whole Basco ranch, commencing in 1877, and succeeding through the year 1878. . . . . I used all the Basco ranch for grazing purposes for sheep. The sheep were in charge of a herder. No other sheep or cattle were allowed to pasture on the land. . . . . I leased the Basco ranch and land in controversy in March or April, 1879, the lease to commence September 15, 1879. Mr. Willis was in partnership with me. . . . . Chapin was living on the Basco ranch as keeper in that house on section 19, defendant's extension 1, during the intervening space between 1878 and 1879; we held possession of the Basco ranch for three years. . . . . We did n't have the land all of 1879; rented it in April, the lease to commence in September, 1879. We had it during 1880–82. Mr. Willis had it in 1883. Willis I know used part of the Basco ranch for grazing."

These tenants sublet portions of the land to tenants, who cultivated portions of it and pastured other portions, paying their rents to the original tenants, who in turn paid to the Bascos.

Willis testifies as follows: "We leased the entire Basco ranch from Beysser (who was then the agent) from September, 1879. I mean Mr. George W. Walker and myself. We were partners. In 1879 we occupied the 1,280 acres, and sublet this 640 acres to Piper. Our sheep were in charge of a herder. Piper farmed part of the land along Rock Creek. He sublet the balance to Shields for grazing sheep. Shields had them in charge of a herder. In 1880 we rented to Piper again, and he sublet to Shields. I saw Shields's sheep pasturing on the

land. Piper cultivated a part of the creek. In 1881 we sublet to Piper again; he farmed a part of the creek and sublet to Shields. In 1882 we kept the land in controversy ourselves; used it for grazing sheep. Had a herder, and did n't allow other cattle or sheep to feed on the land. In 1883 I had the land in controversy and sublet to Piper. He farmed part and sublet to Shields. He farmed along the creek."

On July 16, 1883, John Urquilux, who held the title as aforesaid, conveyed the premises in controversy to the defendant Catherine Beysser; and she entered under the deed. Her husband testifies as follows:—

"The deed was made in July, 1883, but it was subject to a lease which ended only on the twenty-fifth day of November, and it is then that we got possession of the land. We at once drove our cattle on it, between sixty and seventy head. We used the land for pasturage until the 23d of March, 1884. We had a herder to drive the cattle in charge on the land and watch them."

This was corroborated by the testimony of Mrs. Beysser and the herder, Fairbanks.

Part of the land was fit for cultivation, and part for pasturage only. (Fols. 163, 164, 211, 221.)

There is no evidence substantially conflicting with the foregoing. And there is nothing to show that during all this time there was any attempt at adverse possession by any one else,—until the forcible dispossession by plaintiff in March, 1884. The defendant and her predecessors paid all the taxes.

We think the evidence shows a case of possession under color of title within the rule of *Webber* v. *Clarke*, 74 Cal. 11.

It is claimed that there was error in the admission of evidence. We are inclined to think that the declarations of Mrs. Beysser, while in possession, were admissible as part of the *res gestæ* upon the question of the openness and notoriety of the possession. (See generally *Draper*

v. *Douglass*, 23 Cal. 348:) But however this may be, we think that the answers were so vague that no injury could have resulted.

We see no error in the instructions, and therefore advise that the judgment and order appealed from be affirmed.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

Hearing in Bank denied.