[Civ. No. 22091. First Dist., Div. One. Mar. 25, 1965.]

MARION CURTNER WELLER, Plaintiff, Cross-defendant and Appellant, v. ROBERT CHAVARRIA et al., Defendants, Cross-complainants and Respondents.

236

Frederick W. Mielke for Plaintiff, Cross-defendant and Appellant.

Malovos, Mager & Chasuk and Jon P. Harward for Defendants, Cross-complainants and Respondents.

SULLIVAN, P. J.—In this action to quiet title to a roadway, plaintiff appeals from the adverse portion of a judgment decreeing that certain defendants and cross-complainants[1] (hereafter referred to as the Chavarrias), as descendants of one Maria Higuera Chavarria, are the owners of an undivided one-half interest therein.

It is not disputed that plaintiff at all material times has been and is the owner of record of an undivided one-half interest in the roadway. The present controversy revolves about the ownership of the remaining one-half. Plaintiff commenced this action under the so-called ten-year statute of adverse possession (Code Civ. Proc., § 749.1) alleging that she held legal title of record to an undivided one-half interest and that by herself she had been in the actual, exclusive and adverse possession of the whole of the property continuously for 10 years prior to the filing of her complaint. Defendants and cross-complainants Frank D. Cuciz, Irma V. Cuciz, Joseph L. Cuciz and Elizabeth I. Cuciz[2] (hereafter referred to as the Cucizes) admitted that plaintiff held legal title to an undivided one-half interest, denied plaintiff's claim to ownership by adverse possession of the other undivided one-half interest, claimed that they themselves were the owners of a right-of-way over the roadway in question for ingress and egress from and to the Old Oakland Highway to and from their real property, and further claimed that they were the owners of the aforementioned undivided one-half interest of the roadway to which plaintiff did not have legal title of record. The Chavarrias (see fn. 1, *ante*) similarly admitted plaintiff's legal title to an undivided one-half interest but denied her claim to the ownership of the other one-half, claiming on their own behalf that the record title thereto was in their ancestor Maria Higuera Chavarria who died in 1909 and that, as the sole heirs of Maria, they were seized in fee simple absolute of such undivided one-half interest.

The trial court found and concluded, so far as is here pertinent, that plaintiff was the owner of an undivided one-half interest in the subject property; that the Chavarrias, as descendants of Maria Higuera Chavarria, were the owners of the other undivided one-half interest; that plaintiff was

---

[1]Said defendants and cross-complainants, respondents herein, are: Robert Chavarria, Marvin Chavarria, William N. Chavarria, Edward J. Chavarria, Jack J. Chavarria, Marie Ratzburg, Kenneth R. Chavarria, George Louis Chavarria, Dorothy Santos and Lucille Mendia.

[2]The Cucizes were granted leave of court to intervene by answer and cross-complaint. They are not parties to the present appeal.

the owner of an easement over and along the undivided one-half interest of the Chavarrias for ingress and egress from and to the Old Oakland Highway to and from plaintiff's ranch located at the easterly end of the roadway; that the Cucizes were the owners of an easement over and along the subject property and an additional ranch road extending southerly from the easterly end of the subject property to the Cuciz property for ingress and egress from and to the Old Oakland Highway; that the fee simple title of plaintiff and the Chavarrias was subject to any interest which the City and County of San Francisco had acquired or might acquire by virtue of a certain condemnation action, to a certain right-of-way of the Milpitas Water District and to a certain gas line right-of-way of the Pacific Gas and Electric Company. Judgment was entered accordingly.[3]

The property subject of the present action is known as the Rancho Higuera Road or Higuera Road. This road runs generally eastward from the Old Oakland Highway to plaintiff's ranch which is known as Rancho Higuera and sometimes referred to in the record as the Curtner or Weller ranch.[4] It is 3898.95 feet long and 33 feet wide and has an area of 2.954 acres. Next to the Rancho Higuera on the south lies the Cuciz property, reached, as we have noted, by another road running southerly from the eastern terminus of the Higuera Road.

The Higuera Road was conveyed in 1869 by Henry Rengstorff to Leo Norris and Valentine Higuera in equal shares as tenants in common. In 1873 Valentine Higuera conveyed his interest in the property to his daughter Maria Higuera Chavarria who died in 1909. The evidence received below disclosed no subsequent transfers of record of Valentine's original interest. Maria had 10 children, only three of whom died leaving spouses or issue. The Cuciz property was owned by some of the Chavarrias until 1949.[5] In fact Maria Higuera Chavarria's family were at one time the owners of the ranch properties now owned by both plaintiff and the Cucizes.

As defendants concede, the undivided one-half interest of

[3]In his memorandum of decision the trial judge states *inter alia*: "The Court finds from the evidence and the law applicable thereto that the Plaintiff has not met the burden required of her that would entitle her to the judgment sought by her."

[4]Plaintiff, neé Marion Curtner, was the daughter of William M. Curtner and May Weller Curtner and the sister of Weller Curtner.

[5]The 15-acre tract now owned by the Cucizes had also been conveyed by Valentine to his daughter Maria. In 1949 the Chavarrias sold it to the Pedros who in turn sold to the Cucizes.

Leo Norris in the roadway passed to members of plaintiff's family and eventually to plaintiff in 1952 as the sole owner thereof.

Plaintiff testified[6] that she was born on the Curtner ranch and lived there until she was married. After her husband's death in 1958 she returned to the ranch and made it her home. Since 1952, when she became sole owner of the original Norris interest in the roadway, she has borne the entire cost of maintaining Higuera Road, providing the necessary grading, graveling and rolling, using her own grader and at times hiring others to do the work. Prior to 1952 plaintiff and her family had similarly maintained the road since 1925 except on one occasion in 1945 when the Silvas entered into an agreement with plaintiff's family to do so. She also testified that since 1952 signs have been placed at the western end of the road where it meets the Old Oakland Highway stating the following: "Rancho Higuera, Theodore-Marion Weller," "Private Drive, No Parking," "Private Property, Not a Through Road." Even prior to 1952, including the time when members of the Chavarria family lived on the property, there had been a sign at this location containing the words "Private Property." The road was always fenced on both sides except that a section of the fence near the public school was removed. Plaintiff did not erect any fences herself and stated that the existing fences were in place even when the members of the Chavarria family lived on the property.

Plaintiff further testified that she always considered the roadway to be her own property and treated it as such, although since 1952 or 1953 she has known that there was some "cloud in the title" as a result of which it appeared that she had only an undivided one-half interest in the property. In 1960 and 1961 she granted easements over the roadway to the Milpitas County Water District and to the Pacific Gas and Electric Company. On neither occasion did she communicate with the Chavarrias to ascertain if they had an interest in the property or to advise them of her action. Plaintiff never informed any member of the Chavarria family that she claimed full ownership of the roadway nor did she or her family ever attempt to keep the Chavarrias off the roadway when the latter were living on the Cuciz property.[7]

---

[6]Plaintiff called no other witnesses on her behalf.

[7]Plaintiff did not personally know any of the respondents. All of the members of the Chavarria family whom she knew were dead at the time of the trial.

240

Frank E. Cuciz, one of the Cucizes, defendants and cross-complainants below but not parties to this appeal, testified that he and his family owned a 15-acre parcel on the south side of the Weller ranch. They acquired this property in 1952 from the Pedros who had purchased it from the Chavarrias in 1949. The Cucizes and their tenants always used the Higuera Road and the other ranch road (running south from the easterly end of the Higuera Road and sometimes referred to in the record as the Cuciz Road) in going to and from the Old Oakland Highway. At no time were any of these parties told that they had no right to do so. They maintained the Cuciz Road but not the Higuera Road. However, the witness saw some of the Chavarrias working on the Higuera Road—''They used to help with the grader or incidentals''—although he had no knowledge of the arrangements under which they did so, that is, whether as employees of the Curtner ranch or in some other capacity. The witness testified that he always felt that the Higuera Road was part of the Cuciz property and that while they claimed no ownership of the Cuciz Road, they considered that the Chavarria interest in the Higuera Road passed to them with the 15 acres which, at one time, were owned by the Chavarrias. However Cuciz admitted that his policy of title insurance covered only his 15-acre ranch with provision for a right-of-way over the Higuera Road[8] and the so-called Cuciz Road and that it did not disclose any ownership of the Higuera Road itself.

Mrs. Della Chavarria, the widow of Frank Chavarria, who died in 1957 and was the last survivor of the 10 children of Maria Higuera Chavarria, testified that she and her husband never lived on the ranch but visited it on many occasions—''pretty near every Sunday we were out there. . . .'' She stated that on some of these occasions she saw members of the Chavarria family working on the Higuera Road to keep it in repair.[9] She also visited the ranch on more recent occasions presumably after the Chavarrias sold it, although the time and frequency of these later visits do not appear in

[8]The witness based his answer as to the right-of-way on the inclusion in the title insurance policy of a certain affidavit of W. M. Curtner and Weller Curtner which appeared of record, contained statements as to such right-of-way, and which we discuss *infra*. The title insurance policy itself was not received in evidence.

[9]According to the witness, her brother-in-law John Chavarria and Mr. Curtner (presumably plaintiff's father) worked on the road and after John's death, Charlie Chavarria and Weller Curtner (presumably plaintiff's brother) assumed this responsibility.

the record. "We have taken a ride down there to see the old place and see just for sentimental reasons." Nobody ever told the witness that she could not use the roadway nor did plaintiff or any other person ever demand money from her for maintaining it. Shortly before the present dispute arose, although the date does not appear from the record, Mrs. Chavarria telephoned plaintiff and told the latter that a Mr. Schulte had inquired of the witness "if I knew we owned the road, and I said yes." The witness then made an inquiry as to the taxes on the property. During this telephone conversation plaintiff made no adverse claim that she had full ownership of the roadway.

All of the parties stipulated in writing that no taxes have at any time been levied or assessed against the property involved in the instant action.

Plaintiff asserts that the uncontroverted evidence establishes all requisite elements of adverse possession and compels the conclusion that she has title to the property on such basis. As part of such argument she claims that the trial court improperly excluded certain documentary evidence. We must first consider whether the court committed reversible error in so doing. We then propose to examine the sufficiency of the evidence. Preliminarily, however, we set forth certain basic principles which govern the action.

In *West* v. *Evans* (1946) 29 Cal.2d 414, 417 [175 P.2d 219], it was said: "To establish title by adverse possession, the claimant must establish five elements in connection with his occupancy of the property. [Citations.] (1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner. [Citations.] (2) Possession must be hostile to the owner's title. [Citations.] (3) The holder must claim the property as his own, either under color of title, or claim of right. [Citations.] (4) Possession must be continuous and uninterrupted for five years. [Citations.] (5) The possessor must pay all of the taxes levied and assessed upon the property during the period. [Citations.] Unless each one of these elements is established by the evidence, the plaintiff has not acquired title by adverse possession." (In accord: *Laubisch* v. *Roberdo* (1954) 43 Cal.2d 702, 706 [277 P.2d 9]; *Dimmick* v. *Dimmick* (1962) 58 Cal.2d 417, 421-422 [24 Cal.Rptr. 856, 374 P.2d 824]; *Mosk* v. *Summerland Spiritualist Assn.* (1964) 225 Cal.App.2d 376, 381 [37 Cal.Rptr. 366]; *Podd* v. *Anderson* (1963) 215 Cal.App.2d 660, 667 [30 Cal.Rptr. 345]; *Nutting*

242

v. *Herman Timber Co.* (1963) 214 Cal.App.2d 650, 657 [29 Cal.Rptr. 754]; *Mooney* v. *Shields* (1961) 196 Cal.App.2d 165, 169 [16 Cal.Rptr. 449]; *Wilkerson* v. *Thomas* (1953) 121 Cal.App.2d 479, 487 [263 P.2d 678].) ▮ The burden is on the claimant to prove every essential element by clear and satisfactory evidence. (*Dimmick* v. *Dimmick, supra,* 58 Cal.2d 417, 422; *Brown* v. *Bachelder* (1932) 214 Cal. 753, 757 [7 P.2d 1027]; *Mosk* v. *Summerland Spiritualist Assn., supra,* 225 Cal.App.2d 376, 382; *Nutting* v. *Herman Timber Co., supra,* 214 Cal.App.2d 650, 657-658; *Clark* v. *Stotts* (1954) 127 Cal.App.2d 589, 592 [274 P.2d 172]; *Yuba River Sand Co.* v. *City of Marysville* (1947) 78 Cal.App.2d 421, 429-430 [177 P.2d 642].)

In the instant case plaintiff asserts ownership by adverse possession under claim of right and *not* under color of title (Code Civ. Proc., §§ 324, 325). As previously noted she rests her claim on the so-called *10*-year statute. (Code Civ. Proc., § 749.1.) It is also clear from the record that the relationship of cotenants existed between plaintiff and the Chavarrias, respondents herein. Maria Higuera Chavarria was a cotenant of plaintiff's predecessors in interest and, as the trial court found, respondents are the descendants of Maria and as such became vested with the undivided one-half interest in the roadway formerly owned by Maria. The court's finding and conclusion that Maria's title devolved upon respondents has not been attacked on appeal and in any event is, in our view, supported by the evidence.[10] Plaintiff's position here is not that Maria and her successors did not have title but that plaintiff acquired such title by adverse possession.

Where, as here, a claim of ownership by adverse possession is asserted against a cotenant additional principles become operative. ▮ It is settled law that the exclusive occupancy of jointly owned premises by a cotenant is deemed permissive and does not become adverse until the tenant *out of possession* has had either actual or constructive notice that the possession of the cotenant is hostile to him. (*West* v. *Evans, supra,* 29 Cal.2d 414, 418; *Dimmick* v. *Dimmick, supra,* 58 Cal.2d 417, 422; *Johns* v. *Scobie* (1939) 12 Cal.2d 618, 623-624 [86 P.2d 820, 121 A.L.R. 1404]; *Faubel* v. *McFarland* (1904) 144 Cal. 717, 720 [78 P. 261]; *Unger* v. *Mooney* (1883) 63 Cal. 586, 591-592 [49 Am. Rep. 100]; *Miller* v.

---

[10]Respondents correctly point out to us that as the sole surviving heirs of Maria they have the right to defend the present action by virtue of Probate Code section 581.

*Myers* (1873) 46 Cal. 535, 539; *Kraemer* v. *Kraemer* (1959) 167 Cal.App.2d 291, 306-307 [334 P.2d 675]; *Wilkerson* v. *Thomas, supra,* 121 Cal.App.2d 479, 487-488; *Hebert* v. *Miller* (1949) 94 Cal.App.2d 211, 214 [210 P.2d 251]; *Zolezzi* v. *Michelis* (1948) 86 Cal.App.2d 827, 830 [195 P.2d 835].)

As the court said in *Wilkerson, supra*: ''A cotenant out of possession is entitled to assume that the permissive possession of his cotenant continues to be amicable until he is charged with some form of notice that such possession has become hostile. [Citations.] Before title may be acquired by adverse possession as between cotenants, the occupying tenant must bring home or impart notice to the tenant out of possession, by acts of ownership of the most open, notorious and unequivocal character, that he intends to oust the latter of his interest in the common property. [Citations.] Such evidence must be stronger than that which would be required to establish a title by adverse possession in a stranger. [Citations.]'' (P. 488.) In short, one tenant in common cannot by mere exclusive possession acquire the title of his cotenant. (*Faubel* v. *McFarland, supra.*)

With these principles in mind we turn to consider plaintiff's claim that certain documentary evidence was erroneously excluded. Two separate documents are involved.

During the direct examination of plaintiff, her counsel offered in evidence an agreement entered into in 1945 by plaintiff and other members of her family[11] with Joseph T. and Isabella Silva covering the maintenance of Higuera Road. So far as is here pertinent, the agreement, after reciting that plaintiff and the three Curtners were the owners of the road, conferred on the Silvas ''a non-exclusive license of ingress and egress'' over it and provided that the latter should pay one-sixth of any costs of maintenance, repairs or improvements. All defendants objected on the ground that the agreement was self-serving. Plaintiff's counsel conceded that it was self-serving but stated that it was offered to prove that the Curtners were then claiming ownership.[12] No evidence

[11]W. M. Curtner, May W. Curtner and W. W. Curtner, plaintiff's father, mother and brother.

[12]The following occurred: ''MR. MIELKE [Plaintiff's counsel]: That does not establish ownership, your Honor. That does not establish ownership, but it goes to prove that they were claiming ownership and one of the requirements of adverse possession is possession with a claim of ownership, a claim of title, a claim against the whole world, and this is evidence contemporaneous, long before this suit was filed. THE COURT: Well, I do not think that this would support a claim against the world, because the other . . . parties to this litigation are not a part of this agreement.''

was introduced or offered that any of the Chavarrias had actual or constructive notice of the agreement. The court sustained the objection.

Shortly thereafter plaintiff offered an affidavit of W. M. Curtner, her father, and Weller Curtner, her brother, executed on November 9, 1935, when said parties together with plaintiff and her mother were cotenants of the roadway. The Curtners stated therein that a certain "roadway leading from the land of Frank Chavarria et al to the San Jose-Oakland Highway" was "over, along and across the lands now owned by said W. M. Curtner, et al" and that Frank Chavarria and his coowners had acquired a prescriptive easement over the roadway.[13] A sketch attached to the affidavit identifies the roadway as the Curtner (i.e., Higuera) Road and the road extending from the easterly end thereof, subsequently known as the Cuciz Road. As previously noted, it was this affidavit which was referred to in the Cuciz policy of title insurance. (See fn. 8, *ante.*)

Counsel for the Chavarrias objected to the affidavit on the grounds that no proper foundation had been laid and that it was hearsay. Plaintiff's counsel stated that Frank Chavarria secured the affidavit in connection with an application for a bank loan,[14] that the affidavit "was recorded so the whole world is of notice" and that "the heirs of Frank Chavarria are held by his acts, by his admissions, by his declarations."[15] The objection was sustained.[16]

---

[13]In this latter respect the affidavit states: "Said Frank Chavarria and his co-owners of the real property now owned by said owners, a description whereof is contained hereinafter, and their predecessors in interest have used said right of way for more than twenty years last past without objection to such user being made by the owners of the land over and along which said right of way is located, and such user has been continuous, uninterrupted, adverse, and under a claim of right during all of said time herein mentioned and such user has during all of said period been with the knowledge of the owners of the said land over and along which said right of way is located."

[14]The affidavit shows the following printed endorsement: "RECEIVED Federal Land Bank NOV 13 1935"

[15]A stamped endorsement discloses that the affidavit was recorded in the Office of the County Recorder of Santa Clara County on February 7, 1949.

[16]The following colloquy occurred: "THE COURT: Well, this is not a declaration of Frank. MR. MIELKE [Plaintiff's counsel]: It is an act, having recorded it. THE COURT: I do not know who recorded it. MR. MIELKE: I beg — THE COURT: I do not know who recorded it. MR. MIELKE: Well, he obtained it for the purpose of making a loan. THE COURT: There is no testimony in here to this effect, counsel. Up to the present time I must sustain that it be allowed to remain in for identification."

Subsequently on the cross-examination of defendant Cuciz, plaintiff referred to the affidavit in connection with the Cuciz policy of title insurance (not in evidence, see fn. 8, *ante*) in an apparent attempt to establish through the witness that it was the same affidavit as that mentioned in the policy. Counsel for the Chavarrias objected ''on the same basis as I objected to it before'' whereupon the court stated: ''I think it is a self-serving affidavit that does not prove anything.'' The inquiry as to the affidavit then ended. Plaintiff made no further attempt to introduce the affidavit and neither introduced nor offered any evidence showing that the affidavit was obtained or seen by Frank Chavarria or any other Chavarria or that it was recorded by or on behalf of any of such persons. However on motion for new trial plaintiff's counsel filed a ''Declaration on Newly Discovered Evidence'' stating in substance that *subsequent* to the trial he discovered evidence which would establish the fact that the 1935 affidavit was recorded concurrently with the recordation of the sale of the 15-acre tract by the Chavarrias to the Pedros.

In summary, defendants objected to both documents on the grounds that they constituted self-serving hearsay and the court seems to have excluded both because the Chavarrias had no notice of them. (See fns. 14 and 16, *ante*.) Declarations of a party claiming title by adverse possession respecting his claim made at any time while in posssession and before commencement of the action are admissible as verbal acts tending to show the adverse notice of his claim. (*Cannon* v. *Stockmon* (1869) 36 Cal. 535, 541 [95 Am.Dec. 205]; *Marshall* v. *Beysser* (1888) 75 Cal. 544, 547 [17 P. 644]; *Turney* v. *Sousa* (1956) 146 Cal.App.2d 787, 790 [304 P.2d 1025]; see *Stockton Savings Bank* v. *Staples* (1893) 98 Cal. 189, 193 [32 P. 936]; 6 Wigmore on Evidence (3d ed.) § 1778.)[17] Such declarations, not being offered testimonially, do not fall within the hearsay rule (see 6 Wigmore, *op. cit.*, § 1772, p. 190 et seq.; Witkin, Cal. Evidence, p. 242) and the mere fact that they are self-serving does not preclude their admission in evidence. (See Witkin, *op. cit.*, p. 234.)

Nevertheless while the documents in question are susceptible of the interpretation that the possession of plaintiff and her coowners had become hostile to the Chavarrias, the record is

---

[17]Wigmore states: ''They are merely verbal parts going to make up the whole act of occupation, and are not given any testimonial force as credible assertions: . . . they are not offered except as *coloring the occupation.*'' (6 Wigmore, *op. cit.*, pp. 205, 206.)

bare of any evidence that the latter had, or were in some way charged with, notice of this hostile claim. Such notice was indispensable to acquisition by plaintiff of the title of her cotenants by adverse possession. (See *Wilkerson* v. *Thomas, supra,* 121 Cal.App.2d 479, 487 and other authorities cited *supra.*) Plaintiff asserts that the Curtner-Silva *contract* was erroneously excluded because it "constitutes contemporaneous proof of the claim of ownership of the roadway" but makes no contention that such claim of ownership presumably hostile to the Chavarrias was communicated to the latter. She additionally asserts that the Curtner *affidavit* "constituted both claim of ownership and *notice of the claim*. . . ." (Italics added.) She argues that the affidavit was recorded in connection with the sale of the 15-acre parcel by the Chavarrias to the Pedros and that the Chavarrias "are therefore presently in the position of having recorded the 1935 affidavit, or having acquiesced in its recordation, or certainly charged with constructive knowledge of it, and thereby assuring Pedro of a prescriptive easement over the roadway property." Plaintiff has failed to point out to us any evidence in the record supporting her thesis that the Chavarrias directed or consented to the recordation of the affidavit. It is apparent to us that the factual basis for plaintiff's argument on the affidavit is not in the present record. ██ A reviewing court must accept and is bound by the record before it (*Hom* v. *Clark* (1963) 221 Cal.App.2d 622, 647 [35 Cal.Rptr. 11]; *Barlow* v. *Crome* (1941) 44 Cal. App.2d 356, 361 [112 P.2d 303]), cannot properly consider matters not in the record (*Bank of America* v. *Dowdy* (1960) 186 Cal.App.2d 690, 695 [9 Cal.Rptr. 779]; *Firemen's Ins. Co.* v. *Indermill* (1960) 182 Cal.App.2d 339, 342 [6 Cal.Rptr. 469]; see *Loving & Evans* v. *Blick* (1949) 33 Cal.2d 603, 613-615 [204 P.2d 23]; *McNeely* v. *Claremont Management Co.* (1962) 210 Cal.App.2d 749, 752 [27 Cal.Rptr. 87]; 3 Witkin, Cal. Procedure, § 73, p. 2230), and will disregard statements of alleged facts in the briefs on appeal which are not contained in the record (*Knapp* v. *City of Newport Beach* (1960) 186 Cal.App.2d 669, 679 [9 Cal.Rptr. 90]; *Firemen's Ins. Co.* v. *Indermill, supra*).

██ We therefore conclude: If the exhibits in question were offered to establish plaintiff's hostile claim against the Chavarrias (as plaintiff now claims at least as to the affidavit) they were properly excluded since plaintiff failed to prove that they emanated from the Chavarrias or were in some

way brought home to them. ██ If they were offered as simple verbal acts for the more limited purpose of merely showing the character of plaintiff's possession, their rejection in our view was still not error since plaintiff introduced evidence of other acts to show the adverse character of her possession and the excluded evidence would have been merely cumulative. ██ A court has the inherent discretionary power to limit the introduction of cumulative evidence. (*Estate of Wineteer* (1917) 176 Cal. 28, 30-31 [167 P. 516]; *Moore* v. *Marshall* (1940) 41 Cal.App.2d 490, 494-495 [107 P.2d 89]; Witkin, Cal. Evidence, p. 621.) ██ ██ In any event, assuming *arguendo* that the court should have received the evidence for the limited purpose last indicated, the exclusion of evidence which has only a cumulative effect will not justify reversal on appeal (*Hoagland* v. *Chargin* (1955) 134 Cal.App.2d 466, 474 [286 P.2d 931]; *Agnew* v. *Foell* (1952) 113 Cal.App.2d 575, 578 [248 P.2d 758]; see *Nulty* v. *Price* (1927) 202 Cal. 279, 283 [260 P. 291]), nor will the exclusion of evidence which would not have affected the outcome of the case. (*Fish* v. *Security-First Nat. Bank* (1948) 31 Cal.2d 378, 389 [189 P.2d 10]; see *In re Zimmerman* (1962) 206 Cal.App.2d 835, 847 [24 Cal.Rptr. 329]; *Black* v. *Black* (1949) 91 Cal.App.2d 328, 335-336 [204 P.2d 950].)

Plaintiff relies upon *Redemeyer* v. *Cunningham* (1923) 61 Cal.App. 423 [215 P. 83] in support of her contention that the rejection of the *affidavit* was prejudicial error. It was there held that where the trial court erroneously excluded evidence as to payment of taxes, one of the five elements of adverse possession (see *West* v. *Evans, supra,* 29 Cal.2d 414, 418), such error alone constituted ground for reversal and that it was not incumbent upon the appellant to offer evidence of the other elements of adverse possession. *Redemeyer* is distinguishable from the case at bench. In that case the court improperly rejected all of the claimant's offered evidence on payment of taxes. In the present case, the documents offered were at best only cumulative evidence on the issue of the adverse character of plaintiff's claim. They did not establish that the Chavarrias had notice of such adverse claim and plaintiff neither introduced evidence nor made an offer of proof that the latter parties were charged with such notice.[18]

---

[18]The record shows that Weller Curtner, plaintiff's brother and one of the affiants, was living at the time of the trial. It is noteworthy that plaintiff made no attempt to call Mr. Curtner to prove that the Chavarrias

We take up plaintiff's claim that the evidence compels a conclusion that she acquired title by adverse possession. This claim must fall. Under the applicable rules set forth above (see *Wilkerson* v. *Thomas, supra,* 121 Cal.App.2d 479, 488 and other cases cited therewith) it was incumbent upon plaintiff to prove acts of ownership hostile to her cotenants and brought home to them so as to constitute an ouster. However the trial court found adversely to plaintiff on this issue.[19] This implied finding and the express finding of ownership in the Chavarrias is amply supported by the record. Plaintiff's maintenance of the road was simply the act of a tenant in possession performed for her own benefit and convenience and did not constitute notice of an adverse claim to all of the roadway. Nor did the signs posted at the western end of the road indicate that plaintiff claimed full ownership adversely to her cotenants. Indeed signs stating that the road was private property had always been there even while the Chavarrias lived on the 15-acre parcel. Plaintiff at no time informed the Chavarrias that she claimed full ownership of the property or attempted to keep them from using the roadway. Mr. and Mrs. Frank Chavarria continued to use the roadway on visits as they customarily did and without any objection from plaintiff. The trial court was warranted in concluding that plaintiff's possession of the road, though exclusive in many respects, was not accompanied by acts of such a hostile character as to evince an intention on plaintiff's part to oust her cotenants. Whether plaintiff's possession under the circumstances was open, notorious and hostile to the Chavarrias was a question of fact to be resolved by the trial court on the evidence before it and the reasonable inferences therefrom. (*Brown* v. *Berman* (1962) 203 Cal.App.2d 327, 329 [21 Cal.Rptr. 401]; *Sevenman* v. *Long Bell Lumber Co.* (1954) 129 Cal.App.2d 528, 534 [277 P.2d 510].) Whether there is an ouster and consequent disseisin of a cotenant is a question of fact. (*Oglesby* v. *Hollister* (1888) 76 Cal. 136, 141 [18 P. 146].) The trial

knew about the execution and recordation of the affidavit and thus of the allegedly hostile claim to the roadway. It is also noteworthy that plaintiff does not here contend that the court committed error in denying her motion for a new trial.

[19]This can be reasonably implied from the express finding that the Chavarrias were the owners of an undivided one-half interest in the roadway. (See *Richter* v. *Walker* (1951) 36 Cal.2d 634, 640 [226 P.2d 593]; *Greenberg* v. *Hastie* (1962) 202 Cal.App.2d 159, 173 [20 Cal. Rptr. 747].) Plaintiff made no request for special findings. (Code Civ. Proc., § 634.)

court upon substantial evidence has resolved these questions against plaintiff.

The several cases which plaintiff cites provide no support for her position. Neither *Ortiz* v. *Pacific States Properties* (1950) 96 Cal.App.2d 34 [215 P.2d 514] nor *Sorenson* v. *Costa* (1948) 32 Cal.2d 453 [196 P.2d 900] involved a claim of adverse possession by one cotenant against another. In *Zolezzi* v. *Michelis, supra,* 86 Cal.App.2d 827 the claimant entered into possession under *color of title* (and *not* as here under *claim of right*) by a deed purporting to convey the whole title to the entire property in controversy. Since the claimant's possession was not begun as a tenant in common with anyone or under any instrument defining a cotenancy title, *Zolezzi* fell within the rule articulated in *Akley* v. *Bassett* (1922) 189 Cal. 625, 641-642 [209 P. 576].[20] The case at bench is thus clearly distinguishable from both *Akley* and *Zolezzi.* It is similarly distinguishable from *Unger* v. *Mooney, supra,* 63 Cal. 586, also cited by plaintiff, where the claimant entered into possession under color of title by a deed conveying to him the whole premises, the claimant thus claiming for himself exclusively and not for another. *Unger* held that such entry by a stranger was hostile in nature and sufficient to put the cotenant on inquiry and therefore make him chargeable with notice. In *Palin* v. *Sweitzer* (1937) 8 Cal.2d 329 [65 P.2d 351], as distinguished from the case before us, the adverse claimant gave actual notice to his cotenants that he claimed the entire property as his own. Plaintiff also cites *Oglesby* v. *Hollister, supra,* 76 Cal. 136 in connection with her argument that the Chavarrias abandoned the roadway. This point requires no extensive discussion. Plaintiff offered no direct evidence of abandonment and respondents introduced evidence that Frank Chavarria and his wife Della continued to use the roadway until shortly before the trial. The instant case is in no respect similar to *Oglesby* on its facts.

Finally plaintiff makes two attacks on the findings of the

---

[20]*Zolezzi* quoted from *Akley* as follows: "*The rule is that when one enters avowedly as tenant in common with others,* his possession is the possession of the others, so long as the tenancy in common is not disclaimed. In such cases to constitute the ouster there must be acts of the most open and notorious character, clearly giving notice to the world, and to all having occasion to observe the condition and occupancy of the property, that the intention is to exclude, and does exclude the cotenant. *The rule thus stated, however has no application to a case where the possession of the person in question was neither avowedly begun as a tenant in common, nor instituted under a deed or instrument which defined his title as such.*" (86 Cal.App.2d at p. 831.)

court below. ■ The first is directed to the court's recognition of the easements granted by her to the Milpitas Water District and to the Pacific Gas and Electric Co. The court's holding, plaintiff argues, that she does not have title to the entire roadway and its holding at the same time that the two grantees acquired easements from her are irreconcilable. The above argument ignores the obvious fact that plaintiff is not adversely affected by the judgment insofar as it recognizes the rights of her grantees and, not being aggrieved thereby, may not attack such portion of the judgment on appeal. (See *East Shore Co.* v. *Richmond Belt Railway* (1916) 172 Cal. 174, 178 [155 P. 999] ; *Vogelsang* v. *Wolpert* (1964) 227 Cal.App.2d 102, 125 [38 Cal.Rptr. 440] ; 3 Witkin, Cal. Procedure, p. 2227.)

■ Plaintiff's second attack is directed at the general finding that none of the allegations of her complaint are true except the allegation that she is the record owner of an undivided one-half interest in the property. She points out that one of the allegations of her complaint (thus found untrue) was to the effect that no taxes had been· levied or assessed against the property, a fact stipulated to by the parties. Thus, plaintiff complains, the finding is in conflict with the stipulation. The point is captious and devoid of merit. In view of the stipulation, a finding on the issue of payment of taxes was no longer necessary (*Capital National Bank* v. *Smith* (1944) 62 Cal.App.2d 328, 344 [144 P.2d 665]) and any finding made thereon may be disregarded as surplusage. (*Baer* v. *Lorimer* (1934) 219 Cal. 677, 679 [28 P.2d 909] ; *Los Angeles Athletic Club* v. *Board of Harbor Comrs.* (1933) 130 Cal.App. 376, 394 [20 P.2d 130] ; *Wilson* v. *Mattei* (1927) 84 Cal.App. 567, 573 [258 P. 453] ; *Law* v. *Heiniger* (1955) 132 Cal.App.2d Supp. 898, 900 [282 P.2d 607].)

The judgment is affirmed as to those portions thereof appealed from.

Molinari, J., and Sims, J., concurred.