Filed 3/13/15  Guardianship of Jordyn P. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| Guardianship of JORDYN P., a Minor. | |
| BECKY Z., | F068803 |
| Petitioner and Respondent, | (Super. Ct. No. 13CEPR00015) |
| v. | **OPINION** |
| DOROTHY M., | |
| Objector and Appellant. | |

APPEAL from a judgment of the Superior Court of Fresno County.  Robert H. Oliver, Judge.

Dorothy M., in pro. per., for Objector and Appellant.

Becky Z., in pro. per., for Petitioner and Respondent.

-ooOoo-

### INTRODUCTION

Appellant Dorothy M. appeals the probate court's order denying her petition to terminate guardianship of her daughter Jordyn P. by respondent Becky Z.  Both parties appear in propria persona.

Appellant contends (1) she was denied due process because the court failed to send a "notice to appear" resulting in her failure to attend the October 2013 hearing; (2) respondent has failed to "obey the judge's orders"; (3) respondent obtained "custody of [the minor] by a felonious criminal act"; and (4) the court's "decision was based on false evidence."

Respondent replies (1) appellant was advised of the time and place of the hearing and was not entitled to additional written notice; (2) the court did not order monthly visits between appellant and the minor as alleged; (3) respondent lawfully became the minor's guardian by court order; and (4) the court's decision was not based on "false evidence" but on facts, evidence taken in the form of testimony, and case law.

We affirm the lower court's denial of appellant's petition to terminate respondent's guardianship of Jordyn.

## PROCEDURAL AND FACTUAL BACKGROUND

Shortly before Jordyn was born, appellant and Jordyn's father were arrested and charged with murder in San Diego County. Both parents agreed respondent would act as Jordyn's guardian. After Jordyn's birth and following an investigation by San Diego authorities, respondent took custody of Jordyn at the hospital where appellant had given birth to her while in custody.

Some time later, after Jordyn had been in respondent's care for several months, appellant had a change of heart. She wanted a member of her family to raise her daughter. Jordyn's father, on the other hand, wanted respondent to continue to care for his daughter.

On January 7, 2013, respondent filed a petition for temporary guardianship of Jordyn in the Fresno Superior Court as both reside in Fresno County. Temporary letters of guardianship issued the following day and the matter was set for further hearing.

On January 17, 2013, a competing petition for temporary guardianship of Jordyn was filed by appellant's sister, Rebecca W.

2.

At a March 7, 2013, hearing, respondent's temporary guardianship of Jordyn was extended and a trial date was scheduled.

Trial began April 23 and resumed April 30, 2013.  Numerous witnesses testified, including appellant, respondent, and Rebecca W.  Following argument, the court denied Rebecca W.'s petition and granted guardianship of Jordyn to respondent.  Letters of guardianship were issued on May 15, 2013.

Appellant then filed a petition to terminate guardianship on or about August 7, 2013.  The matter was set for hearing in October.  Jordyn's father filed a declaration dated October 17, 2013, opposing appellant's petition to terminate the guardianship.

On October 21, 2013, the court denied appellant's petition to terminate the guardianship of Jordyn by respondent.  This appeal followed.

## PRELIMINARY MATTERS

First, our review has been somewhat hampered by appellant's failure to designate an adequate record.  (Cal. Rules of Court, rule 8.122.)  For example, the clerk's transcript does not contain copies of the petition to terminate guardianship filed in August 2013.  Yet the court's October 2013 ruling—from which appellant appeals—concerned that petition.

> A party acting as her own attorney

> "'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.  [Citation.]' (*Barton v. New United Motor Manufacturing*, *Inc.* (1996) 43 Cal.App.4th 1200, 1210.)  Thus, as is the case with attorneys, pro. per. litigants must follow correct rules of procedure.  (*Kabbe v. Miller* (1990) 226 Cal.App.3d 93, 98; *Bistawros v. Greenberg* (1987) 189 Cal.App.3d 189, 193 [self-represented party 'held to the same restrictive procedural rules as an attorney']; *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638–639 [same].)" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)

Further, rule 8.204(a)(1)(C) of the California Rules of Court requires all appellate briefs to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."  It is well-established that "'[i]f a party fails to support an argument with the necessary citations to the record, … the argument

[will be] deemed to have been waived. [Citation.]'" (*Nwosu v. Uba*, *supra*, 122 Cal.App.4th at p. 1246.) Appellant's opening brief does not contain a single citation to the record. Although she has failed to provide the necessary citations to support her arguments, and as a result her arguments are subject to forfeiture, we will nevertheless briefly address each asserted error to explain our affirmance.

We advise appellant that

> "'[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.)

Furthermore, an appellate court will disregard factual assertions based on information that is not in the record before it. "A reviewing court must accept and is bound by the record before it [citations], cannot properly consider matters not in the record [citations], and will disregard statements of alleged facts in the briefs on appeal which are not contained in the record." (*Weller v. Chavarria* (1965) 233 Cal.App.2d 234, 246.)

We will not consider legal arguments based solely on conclusory citations. "An appellate court is not required to consider alleged errors where the appellant merely complains of them without pertinent argument" (*Strutt v. Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 873), including when "the relevance of the cited authority is not discussed or points are argued in conclusionary form." (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.)

Lastly, as explained by the California Supreme Court in *Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1122, dependency and guardianship are not one in the same:

> "After the passage of the juvenile dependency statutes, probate guardianships have continued to provide an alternative placement for children who cannot safely remain with their parents. [Citation.] The differences between probate guardianships and dependency proceedings are significant. [Citation.] Probate guardianships are not initiated by the state, but by private parties, typically family members. They do not entail proof

4.

of specific statutory grounds demonstrating substantial risk of harm to the child, as is required in dependency proceedings. [Citations.] Unlike dependency cases, they are not regularly supervised by the court and a social services agency. No governmental entity is a party to the proceedings. It is the family members and the guardians who determine, with court approval, whether a guardianship is established, and thereafter whether parent and child will be reunited, or the guardianship continued, or an adoption sought under [Probate Code] section 1516.5."

## DISCUSSION

### I.   The Alleged Denial of Due Process

Appellant argues she was denied due process and the right to cross-examine witnesses at the October 21, 2013, hearing because the "court failed to send the 'Notice to Appear.'" Appellant's assertion is not supported by the record on appeal, nor does she offer any legal authority to buttress her position.

Under headings entitled, "The Element of the Action" and "Evidence," appellant asserts that, in a conversation with a "facility watch commander and counseling staff," she "was told the 'notice to appear' must be sent by the court" in order to allow her access to a telephone for purposes of making an appearance. She claims the court had done so on previous occasions and thus it was "aware of the policy and process." We note appellant's conversations with facility and counseling staff are not properly considered because those conversations are not part of the record. (*Weller v. Chavarria*, *supra*, 233 Cal.App.2d at p. 246.)

The information available within the record reveals appellant was aware of the October 21, 2013, hearing date as it is expressly referenced in her own August 2013[1] correspondence directed to the court. In that correspondence, appellant requests the court "issue an order allowing [her] to attend" the hearing "via telephone" due to her incarceration. She asks the court to "send a copy of the orders for mediation/transport

---

[1]Appellant also sought the appointment of an attorney to represent her in those proceedings. However, a parent is not entitled to counsel in probate guardianship proceedings. (*Guardianship of H.C.* (2011) 198 Cal.App.4th 1235, 1249.)

5.

and attendance by phone or video" to the Las Colinas Detention Facility or the San Diego County Sheriff. Appellant referenced Penal Code section 2625 as authority in support of her request.

On appeal, appellant has failed to provide any legal authority indicating the probate court was required to issue the orders she requested. She simply concludes it should have done so. (*Strutt v. Ontario Sav. & Loan Assn.*, *supra*, 28 Cal.App.3d at p. 873; *Kim v. Sumitomo Bank*, *supra*, 17 Cal.App.4th at p. 979.) Even ignoring that procedural defect, the fact remains appellant is mistaken. The court was not obligated to comply with her request. As explained in *In re Barry W.* (1993) 21 Cal.App.4th 358, 368-370:

> "The only logical reason to mandate notice to prisoners is to afford them an opportunity to make a demand to attend the noticed proceeding. Because the first paragraph of Penal Code section 2625 only requires notice when the proceeding 'seeks to terminate parental rights of any prisoner [or] seeks to adjudicate the child of a prisoner a dependent child of the court,' it follows that the mandatory duty to produce the prisoner, found in the fourth paragraph of Penal Code section 2625, applies only in those limited circumstances. It would be incongruous to construe the statute to first limit the actions in which notice is required but then to broaden the category of actions in which the trial court is mandated to honor an incarcerated parent's demand to be present. Stated another way, the requirement of giving notice implements the policy of ensuring that an incarcerated parent has knowledge of pending actions which significantly impact the parental relationship so that the parent is therefore able to make a demand to be present at those statutorily enumerated hearings. [¶] … [¶]

> "Our conclusion that appellant did not have an absolute right to attend a hearing whose sole purpose was to decide whether guardians should be appointed for his son, Barry W., is fortified by examining the language in Penal Code section 2625 which follows the provisions just analyzed. The fifth paragraph of the statute begins by stating that it applies '[i]n any other action in which a prisoner's parental or marital rights are subject to adjudication.' In those situations, the superior court 'may' issue an order requiring the production of the prisoner. This provision is in sharp contrast to the fourth paragraph of the statute where issuance of an order for the prisoner's presence is couched in the mandatory 'shall.' [¶] … [¶]

> "We therefore conclude that the fifth paragraph of the statute vests the trial court with discretion to determine whether it shall call for the

6.

prisoner's presence when the case does not involve termination of parental rights or a declaration of dependency. Accordingly, it follows that such a case may proceed without attendance by the prisoner-parent." (Fn. omitted.)

Here, then, appellant was present and testified at the hearing in April 2013 wherein respondent was ultimately appointed guardian of Jordyn. The court was required to—and did—ensure appellant's appearance on that occasion. However, it was not obligated to arrange for appellant's telephonic appearance at the October 2013 hearing because appellant did not have an absolute right to attend that hearing.

Additionally, it can be inferred from the record available that the trial court would not have concluded differently even had appellant been permitted to appear by telephone in order to "cross exam[ine] the court investigator per Family Code [section] 3115."[2]

Again, guardianship had already been awarded to respondent. Appellant was seeking termination of that existing guardianship, yet because the record does not include a copy of her petition, it is impossible to know for certain upon which basis appellant sought the termination. Plainly, the court was already aware of appellant's desire for Jordyn to be removed from respondent's care and placed with a member of her family. Appellant's sister Rebecca W. had previously filed a petition seeking to be named as Jordyn's guardian. The matter was fully adjudicated and Rebecca's petition was denied. Moreover, appellant frequently filed declarations with or wrote letters to the court asking it to terminate respondent's guardianship in favor of an appointment of a member of her family.

The minute order from the October 21, 2013, proceeding provides as follows:

"Nature of Hearing: Petition for Termination of Guardianship

---

[2]Family Code section 3115 provides that "[n]o statement, whether written or oral, or conduct shall be held to constitute a waiver by a party of the right to cross-examine the court-appointed investigator, unless the statement is made, or the conduct occurs, after the report has been received by a party or his or her attorney."

"The Court notes that Petitioner [Dorothy] and Rebecca W[.] are not present. The Court finds that father has been given actual notice based on the declaration submitted by him for this hearing.[3] The Court notes for the minute order that the guardianship was granted on 4/30/13 and there have been no substantial changes to warrant a termination of the guardianship. The petition is denied."

When a party is seeking to terminate an existing guardianship, the court will determine whether termination is in the child's best interest. (Prob. Code, § 1601; Cal. Rules of Court, rule 7.1004(a).) The focus is on the stability of the minor's placement and the minor's best interest. A court will be concerned with the emotional disruption the child incurred by removing her from the care of the guardian with whom the child may have formed a strong bond and experienced a stable environment. (*Guardianship of Kassandra H.* (1998) 64 Cal.App.4th 1228, 1238; see *Guardianship of L.V.* (2006) 136 Cal.App.4th 481.) Here, as quoted more fully above, the court indicated the petition was denied because "no substantial changes" warranted a termination of the guardianship. The record contains father's opinion that Jordyn was "thriving" in respondent's care. It also includes points and authorities submitted on behalf of respondent by counsel below, noting Dr. Susan Napolitano's expert opinion that respondent was providing Jordyn with stable and consistent care and that Jordyn was "'thriving'" and had "attained all of her milestones and is ahead in many. She further described Jordyn as 'bright and happy.'" Again, the court had previously found respondent to be a suitable guardian for Jordyn, and it can be reasonably inferred that the lack of substantial change reference meant the court believed it remained in Jordyn's best interest to remain with respondent.

As explained above, appellant's due process rights were not violated.

---

[3]Father executed a declaration dated October 17, 2013, wherein he expressed his desire that respondent remain as Jordyn's guardian. He asked that appellant's petition to terminate guardianship be denied. Previous to this declaration, on March 2, 2013, father executed a nomination of guardian form in favor of respondent. A parent's nomination is to be given "due weight." (Fam. Code, § 3043.)

8.

## II. The Alleged Failure to Obey Court Orders

Next, appellant contends respondent has failed to obey court orders. More particularly, she claims the judge ordered respondent "to deliver Jordyn [P.] for a monthly visit" and "also ordered a monthly e-mail be sent … detailing Jordyn [P.]'s progress and to send pictures 2-3 times a month." Appellant asserts respondent has "failed to deliver Jordyn [P.] for over 50% of the visits" and includes a reference to Family Code section 3131.[4] She maintains the updates provided by respondent were insufficient, referring to Family Code section 3025,[5] and that respondent failed to send the "court ordered 2-3 photos per month."

Assuming it is properly before this court,[6] appellant's argument that respondent has failed to obey a court order regarding visitation rests on an incorrect premise. That is, that the court *ordered* visitation as she asserts it did. The record reveals otherwise.

This record does not include any reporter's transcript of the proceedings.[7] Nevertheless, the clerk's transcript on appeal provides relevant information on the issue.

First, the record contains a minute order dated March 7, 2013, reflecting the following: "Counsel informs the Court that [respondent] is in agreement with allowing the parents to each have one visit with the child per month." The fact respondent was

---

[4]Family Code section 3131 provides: "If a custody or visitation order has been entered by a court of competent jurisdiction and the child is taken or detained by another person in violation of the order, the district attorney shall take all actions necessary to locate and return the child and the person who violated the order and to assist in the enforcement of the custody or visitation order or other order of the court by use of an appropriate civil or criminal proceeding."

[5]Family Code section 3025 concerns parental access to records. It reads as follows: "Notwithstanding any other provision of law, access to records and information pertaining to a minor child, including, but not limited to, medical, dental, and school records, shall not be denied to a parent because that parent is not the child's custodial parent."

[6]We will assume appellant's petition asserted similarly.

[7]On April 30, 2014, a deputy clerk of the Fresno Superior Court executed a declaration wherein it was explained no reporter's transcripts on appeal could be prepared in this case because hearings conducted in Department 303 of that court do "not provide the services of a court reporter."

amenable to "allowing the parents to each have one visit with the child per month" does not mean the court ordered the visitation actually occur. In fact, the very next entry on the minute order refers to a court *order*, but it does not require visitation. Rather, it reads: "The Court orders [respondent] to send the parents an email once a month regarding the well being of their child and to provide them pictures 2-3 times per month." Therefore, the March 2013 minute order does *not* include an order requiring visitation. Thus, respondent cannot be said to have disobeyed a March 2013 court order concerning visitation.

Simply put, the court did not order visitation between Jordyn and her parents in March 2013. It may have encouraged such visits, but the record does not support appellant's assertion that visitation was court ordered.

The March 2013 minute order does, however, require respondent to send an e-mail once a month and pictures two to three times per month to the minor's parents. And between March 2013 and the court's determination in April 2013, the record establishes respondent complied with that order. Rather than one e-mail a month, in the short period between March 7 and April 12, 2013, respondent sent eight e-mails to appellant. The record also includes a declaration from Jordyn's father filed April 22, 2013, referencing his joy in "watching [his] daughter grow up through the pictures, letters, postcards, emails and photo books" sent by respondent. The record reveals respondent complied with the court's order, and appellant—to the degree she can be heard to complain otherwise—has failed to carry her burden on appeal. (See *Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564.)

It is also plain from the record that appellant's complaints concerning respondent's purported failure to send regular e-mail or photographs began *after* the court trial wherein respondent was awarded guardianship. The March 2013 order was effective until the court made its final determination in April 2013. Yet in April, according to the record before us, the court's order did not address either e-mail or photographs. The minute order provides the following:

"Court considers all relevant evidence and the law including Family Code Sections 3020, 3040, 3041, and applicable case law.

"The Court grants the petition as to [respondent] and denies the petition as to [Rebecca W.]

"The Court orders that the child not leave the United States without a noticed hearing.

The Court further orders that the child not be outside the United States for more than 60 days.

"The Court directs the parties to meet and confer in an effort to start the process of visitation which it believes will be going on for a substantial amount of time.

"Parties are directed to ensure that the child has the best life she can possibly have.

"The Court orders that the minute order become the order of the court."

In sum, the court did not renew its order (made during the temporary guardianship period) that respondent send appellant an e-mail once a month and photographs two to three times per month. Speaking to the issue of visitation on this occasion, the probate court directed "the parties to meet and confer" about visitation—it did not make any particular order regarding a visitation schedule.[8] That was left up to the parties to work out. And rightly so, given its order granting guardianship to respondent:

> "When the court appoints a guardian, the authority of the parent 'ceases.' (Fam. Code, § 7505, subd. (a).) The court has discretion to grant visitation (*Guardianship of Martha M.* (1988) 204 Cal.App.3d 909, 911), but otherwise parental rights are completely suspended for the duration of a probate guardianship (*Guardianship of Stephen G.* [(1995)] 40 Cal.App.4th [1418,] 1426). The guardian assumes the care, custody, and control of the child. (Prob. Code, § 2351, subd. (a).) There is no periodic court review of the placement, as there is in dependency proceedings. (*Stephen G.*, at p. 1429.) Nor is the parent given the reunification services that the county provides to parents of dependent children. (*Guardianship of Kaylee J.*

_____

[8]Our conclusion is further supported by the amended order appointing guardian filed May 13, 2013.

11.

(1997) 55 Cal.App.4th 1425, 1430–1432.)" (*Guardianship of Ann S.*, *supra*, 45 Cal.4th at pp. 1123-1124.)

The guardian is responsible for providing the minor with food, clothing, and shelter. The guardian must decide where the minor will live, how meals, clothing, education, and entertainment will be provided, and what daily routines are to be followed. The guardian stands in place of the parent. (*Guardianship of Howard* (1933) 218 Cal. 607, 610.) Parents, rather than the guardian, have the duty to provide financial support for the minor. (See *Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 947-948.) The court was not required to grant visitation. And according to the record before us, it elected not to do so.

Finally, although visitation, e-mail correspondence, and photographs were not ordered by the court as part of its guardianship determination in April 2013, the record does reveal respondent nevertheless made an effort to provide some measure of each, as suggested. For example, appellant's own correspondence to the court in August 2013 references the fact that a visit occurred between her and Jordyn on July 26, 2013. An early May 2013 visit is also referenced by appellant in a declaration filed September 13, 2013. Further, the record establishes that a visit between appellant and Jordyn was scheduled to occur on October 17, 2013. A relative of appellant's filed a declaration with the court indicating she had received an e-mail and photographs from respondent following the April 2013 proceeding. Notably, too, in a declaration[9] filed October 21, 2013, Jordyn's father indicated he was "allowed the opportunities to have visits with her and to be able to not only watch her as she grows up but also to build a relationship with her." The father further asserted, in addition to visits, he continued to receive "emails and postcards, which come at an average of 2 a month, if not more."

---

[9]Father's declaration was offered in opposition to appellant's petition to terminate guardianship by respondent; he expressed his wish that Jordyn remain with respondent.

12.

In conclusion, the probate court was not required to order, nor did it order, visitation in accordance with any particular schedule. Related thereto, respondent has not failed to adhere to the orders issued by the probate court.

## III.    Respondent's Custody of the Minor Child

Appellant maintains that respondent obtained custody of Jordyn through "a felonious criminal act" and the court erred by failing "to confirm" respondent had lawful custody of Jordyn. This claim is utterly baseless.

The record very plainly reveals both parents originally agreed Jordyn would be placed in respondent's custody given their incarceration in light of pending criminal charges. The record also very plainly reveals San Diego authorities conducted an investigation prior to allowing respondent to take custody of Jordyn at the hospital shortly after her birth. The record contains some evidence in direct contradiction to appellant's claim, to wit: father's declaration. On October 17, 2013, father declared, in relevant part:

> "Becky has been a kind and honest friend in all aspects of her help and in her guardianship of Jordyn. It was the wishes of both Dorothy M[.] and me that Jordyn be with Becky from before her birth and it still is my wish that Jordyn remain in her care. The accusations of Ms. M[.] of any sort of kidnapping or theft are ridiculous and unfounded as we both asked her to not only take our daughter, but to also take and dispose of our belongings in any way she deem suitable."

Appellant's claims of fraud and deceit are unsupportable. Moreover, this court's review is limited to the record before it; we do not take new evidence.

Simply stated, the probate court did not err in this regard, and respondent did not illegally obtain custody of Jordyn.

## IV.    The Sufficiency of the Evidence

Lastly, appellant contends the "judge's decision was based on false evidence" because there is no proof she will be incarcerated for 15 or more years. We find there is substantial evidence to support the probate court's findings.

13.

Initially, we note it appears appellant's argument concerns the court's April 30, 2013, guardianship determination, rather than its denial of her petition to terminate guardianship on October 21, 2013. Nevertheless, we will address it briefly.

We view the evidence in a light most favorable to the respondent, indulging all legitimate and reasonable inferences to uphold the verdict. (*In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1382; *Guardianship of L.V.*, *supra*, 136 Cal.App.4th at p. 487; *In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) If substantial evidence supports the court's finding, we will not disturb it. (*In re Misako R.*, *supra*, at p. 545.) The appellant bears the burden of demonstrating error on appeal. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.) To constitute substantial evidence, the evidence must be reasonable, credible, and of ponderable legal significance and must prove the essentials that the law requires in that particular case. (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336.) The testimony of a single witness can constitute substantial evidence. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

Appellant's claim the court's decision was based upon false evidence lacks merit. The court's determination was based upon a variety of factors, only one of which involved the possible length of her incarceration. The court's findings very clearly indicate it considered "*all relevant evidence and the law ….*" (Italics added.)

To be sure, there was evidence before the court that both Jordyn's parents faced serious criminal charges, including murder. The record reveals that "[t]he issue regarding 'substantial amount of [custody] time'" was raised during the court trial. The court was also aware that neither parent had been tried and, hence, neither had been convicted of any crime. The court was also aware of the possibility that, following trial, father or mother—or both—could be acquitted of the crimes alleged.

Even assuming respondent and her expert witnesses testified appellant would be incarcerated for "15 plus years," that information was speculative at best, and the court was well aware of the circumstances. Because no conviction has occurred, the period of appellant's possible incarceration was, and remains, unknown. A court is presumed to be

14.

aware of and to follow the law. (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443; *Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564.) We will not assume the court accepted the assertion of either respondent or her expert and then based its decision on that testimony.

More significant to the court's decision, as reflected by its express reference to Family Code sections 3020, 3040 and 3041, were Jordyn's best interests. The court's focus is on the child and the child's stability and emotional well-being when considering a petition to terminate guardianship. (Prob. Code, § 1601; *Guardianship of Kassandra H.*, *supra*, 64 Cal.App.4th at p. 1238.) Here, the record reveals Jordyn was in a stable placement with respondent and was indeed thriving as a result. Thus, the court's finding is supported by substantial evidence and should not be disturbed on appeal. (*In re Misako R.*, *supra*, 2 Cal.App.4th at p. 545.)

In conclusion, our review of this record reveals there is substantial evidence to support both the court's original guardianship determination of April 30, 2014, as well as its denial of appellant's petition to terminate that guardianship on October 21, 2013.

## DISPOSITION

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR

_____
LEVY, Acting P.J.

_____
POOCHIGIAN, J.

15.