Filed 10/24/13  Coombs v. Cunningham CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHAEL COOMBS et al., <br><br>　　　Plaintiffs and Respondents, <br><br>v. <br><br>ARCHIBALD CUNNINGHAM, <br><br>　　　Defendant and Appellant. | A131914 <br><br>(San Francisco City & County <br> Super. Ct. No. CPF-10-510760) |

Appellant Archibald Cunningham appeals from the trial court's denial of his petition to vacate an arbitration award and entry of judgment confirming the award in favor of respondents Michael Coombs and Tamara Woods.  Appellant asks that we vacate the award and remand the matter to the superior court for numerous reasons. These include that the superior court erroneously granted respondents' petition to compel arbitration based upon an invalid arbitration agreement; the court and/or the arbitrator did not follow required procedures in evaluating whether a valid arbitration agreement existed; respondents did not meet their burden of showing a valid arbitration agreement existed; the agreement upon which the arbitration award was granted contains unenforceable provisions that are unconscionable and/or voidable as against public policy; and respondents' attorney committed fraud in the execution of the relevant contractual agreements.

Appellant, although much of his criticism is of the determinations made, and summary procedures used, by the trial court in granting respondents' petition to compel arbitration, expressly limits his appeal to challenging the court's later denial of his

1

petition to vacate the arbitration award.  Therefore, we focus on the propriety of that ruling.

Appellant's arguments are often conclusory and unsupported by citations to the record or relevant legal authority.  He ignores important procedural issues, both regarding his arguments below and his arguments to this court.  And he engages in ad hominem attacks against respondents' attorney, which is most inappropriate—not to mention that they have no support in the record.  This approach makes it more difficult to consider the merits of his legal claims and, in many instances, his conclusory, unsupported method of argument and disregard for procedural issues are fatal to his claims.

Despite the difficulties caused by appellant's approach, we have carefully considered each of his arguments.  He raises many issues, but his central argument is that the arbitration and arbitration award were invalid because they were ordered pursuant to a written 2007 Tenant in Common Agreement (TICA) between appellant and respondents.  The TICA, appellant contends, was superseded by the parties' conversion of the property into condominiums held under separate deeds and subject to covenants, conditions, restrictions, and bylaws (collectively, CC&Rs) agreed to by the parties and recorded in September 2009.

The main problem with this "superseded" argument is that appellant did not effectively raise it before the trial court when he had the opportunity to do so in opposition to respondents' petition to compel arbitration.  Instead, he only alluded to a "question" about the TICA's continued viability in light of CC&Rs he summarily referred to and did *not* submit to the trial court.  Given this patently ineffective argument, and respondents' arguments and submissions, we have no reason to disagree with the court's determination that a valid arbitration agreement existed, its grant of respondents' petition to compel arbitration, and its subsequent denial of appellant's petition to vacate the award.

Appellant ignores his failure to timely and effectively raise his "superseded" argument in opposition to respondents' petition to compel.  Instead, he makes a series of unpersuasive arguments, including that he should have been allowed to fully relitigate

2

whether a valid arbitration agreement existed in his petition to vacate the arbitration award; the trial court should have held evidentiary hearings on the issue and the arbitrator should have more closely examined it; respondents did not meet their burden of proving the existence of a valid arbitration agreement because they failed to address the significance of the CC&Rs; and, in a most fantastic argument, respondents' counsel committed fraud by failing to submit the CC&Rs to the court or the arbitrator, although respondents did not rely on them nor agree with appellant's "superseded" argument, and appellant did not submit the CC&Rs either. We conclude these and appellant's other arguments are without merit. We affirm the judgment.

## BACKGROUND

### *Respondents' Petition to Compel Arbitration*

In September 2010, respondents petitioned the superior court for an order compelling the arbitration of their dispute with appellant. Respondents contended the parties had entered into the TICA, which they submitted to the court, and that it governed their co-ownership of real property located on McAllister Street in San Francisco (property). Respondents claimed appellant had violated the TICA by not paying his part of property expenses since February 2010, allowing liens to be recorded against property without respondents' consent, and, after the property was converted into condominiums in April 2010, not refinancing so as to convert his share of the mortgage on the property into a separate mortgage on his condominium.

Respondents further contended the TICA provided for mediation of disputes between the parties and arbitration of those disputes unresolved by mediation. According to respondents, appellant refused to cooperate in arranging a mediation or arbitration. Their attorney submitted a declaration stating he had asked appellant to mediate the dispute, to which appellant had not responded. The attorney further stated that, in his opinion, a mediation would not resolve the dispute because appellant appeared to have neither the funds nor the inclination to resolve his liens with third parties, and his unemployment made it doubtful he could obtain refinancing for his condominium.

3

Finally, respondents' attorney stated he had attempted to obtain appellant's agreement to an arbitration, but appellant had not responded to these communications either.

Appellant, a lawyer appearing on his own behalf, opposed the petition. In his written response, he did not deny he was a party to the TICA, but denied the validity of the parties' agreement to arbitrate their disputes for a number of reasons. First, respondents' attorney sought to bypass the TICA's mediation requirement based on hearsay statements and presumptions and had repeatedly refused to talk with appellant about the disputed issues. Also, whether or not the parties could be compelled to arbitration itself was subject to mediation.

Second, there was a "question" about the TICA's continued viability in light of the parties' conversion of the property into condominiums held under separate deeds and subject to the CC&Rs agreed to by the parties and recorded in September 2009. Appellant attached unauthenticated documents to his brief that he claimed showed the recording of CC&Rs, but did not submit the CC&Rs themselves. He acknowledged that, although the form of ownership had changed, the parties' financing for the property remained a single mortgage. He concluded, "Given the inherent uncertainty in the applicability of the [TICA] or the CC&Rs and the uncertainty of the facts of this case, it would seem that a court would be in a better position to assume jurisdiction and provide an equitable remedy."

Third, the TICA arbitration provision contained ambiguous terms that made it unclear whether the parties had reached a meeting of the minds on arbitration.

Fourth, the TICA arbitration provision was unconscionable because it forced appellant to give up his rights to discovery and a jury trial and go to arbitration without the parties first participating in a mediation, where the arbitrator lacked the court's equitable powers.

Fifth, respondents had "waived" their right to arbitration by making alterations to their property—constructing stairs and placing a furnace beneath them—without permits or inspections that impaired the value of appellant's property, that were code violations, and that presented fire hazards.

4

In their reply, respondents asserted appellant did not support any of his factual contentions with proper evidence, such as declarations. They then replied to each of his opposition arguments as follows. First, a court did not have the authority to order the parties to mediate, the TICA did not require a completed mediation before an arbitration could be ordered, and appellant had waived any mediation requirement by his failure and refusal to cooperate in one.

Second, respondents' petition to compel arbitration itself was not subject to mediation.

Third, the TICA remained in effect because, by its own terms, it could only be terminated if certain conditions occurred. These conditions included that, in the event the property were converted into condominiums, all debts and obligations of the TICA had to be satisfied. Since these conditions were not satisfied, the TICA remained enforceable.

Fourth, there was nothing unconscionable about the arbitration provision, and appellant did not cite any legal authority for his unconscionability claim.

Fifth, appellant did not support his building code violation claim with any evidence, nor support his related waiver claim with any legal authority. If appellant claimed they had breached the TICA, it was a matter that could be submitted for arbitration.

At argument on the petition, appellant asserted respondents' purported failure to attempt to mediate the dispute as the first basis for his opposition, and then raised various factual contentions about the dispute and what should be mediated. He contended the parties did not mediate because respondents' attorney "has tried to rewrite the agreements for his own purposes, namely, a payday under the arbitration clause." He also asserted there was "a question" whether the TICA applied since the property had been "condo-ized."

Respondents' attorney argued that it was "time for arbitration," in part because the attorney had tried to solicit appellant's participation in mediation, but appellant "just blew [him] off."

5

The court granted respondents' petition and ordered the parties to arbitration. In a written order issued in October 2010, the court found that "[m]ediation failed to resolve" the dispute, the TICA contained "a clear and unambiguous arbitration agreement," and appellant "fail[ed] to show the arbitration agreement was invalid or unenforceable."

Appellant, continuing to represent himself, subsequently filed three motions regarding the arbitration, they being (1) for reconsideration of the court's order compelling arbitration; (2) to vacate or stay the arbitration; and (3) to dismiss for lack of jurisdiction. All three were denied.

### *The Arbitration*

Appellant did not participate in the arbitration. The arbitrator issued an award in favor of respondents. He found respondents had purchased from a third party a tenancy in common interest in the property, in which appellant also held a tenant in common interest. In 2007, respondents and appellant entered into the TICA, in which they agreed to pursue and complete a condominium conversion of the property as soon as possible. They obtained a new loan on the property in the amount of $923,000, of which $180,000 was deemed to be appellant's portion. Legal title to the two units was separated by the recording of separate deeds to the units, as condominiums, in April 2010.

As for respondents' three claims against appellant, the arbitrator found, first, that three of appellant's creditors had recorded judgment liens against the property totaling $38,307.05 while the property was still owned as a tenancy in common, which liens continued to encumber respondents' condominium. The creation of the liens was an "actionable violation" of the TICA under its terms.

Second, as of January 31, 2011, appellant owed respondents $6,564.62 for his unpaid portion of the property expenses, which he was required to pay pursuant to the TICA.

Third, appellant and respondents were required by the TICA to sell or refinance their condominiums within six months of respondents' May 12, 2011 written notice to appellant. Respondents had complied as best they could, but could not complete their refinancing because appellant had apparently not arranged refinancing of his

6

condominium nor paid off his portion of the shared mortgage. Further, respondents had established their refinancing would require payment of the judgment liens against appellant. Appellant had not communicated to respondents about any efforts to sell or refinance his property, and had indicated in a declaration to the court that he was indigent and could not refinance his condominium. Appellant's failure to sell or refinance his property was an "actionable violation" of the TICA.

The arbitrator further found that appellant was in default of the TICA by its terms because he had failed to cure any actionable violation, which created an untenable situation for respondents. The shared mortgage required them to pay appellant's portion of the mortgage or risk foreclosure of the property. Were they to sell their condominium at its present market value, it would not be enough to pay off the entire mortgage and appellant's liens. They could not refinance for the same reason. If they defaulted on the mortgage and allowed foreclosure to occur, they would damage their credit rating. Thus, they were compelled to continue paying appellant's property expenses.

The arbitrator concluded that, given appellant's default, respondents were entitled under the TICA to a forced sale of appellant's property, which was the only practical remedy. The arbitrator found an injunction prohibiting appellant from interfering with this sale was warranted. And he also awarded respondents $6,564.62 in damages for appellant's unpaid property expenses, $5,000 in liquidated damages as provided for by the TICA, and attorney fees and costs totaling $48,057.29.

### *The Court's Confirmation of the Arbitration Award*

Respondents petitioned the superior court to confirm the arbitration award. Appellant, continuing to represent himself, served notice pursuant to rule 3.1306(b) of the California Rules of Court that he intended at the petition hearing to present oral testimony from three witnesses regarding respondents' purportedly unpermitted and undisclosed alterations to their property, particularly their installation of a furnace beneath stairs, and the impact of the alterations on appellant's ability to renew property insurance.

Appellant filed a written opposition to respondents' petition, and also petitioned to vacate the award. He submitted a lengthy brief and a declaration with supporting

7

documents, including the CC&Rs, for both. He repeatedly claimed respondents' attorney had engaged in deceptive, fraudulent, and inappropriate actions, largely by selectively and incorrectly asserting the terms of the TICA against appellant instead of reasonably discussing the issues between the parties, while concealing from the court and the arbitrator that the TICA had been superseded by the CC&Rs. Specifically, appellant argued the award should be vacated because the superior court's failure to hold a full evidentiary hearing regarding which agreement controlled before granting respondents' petition to compel arbitration violated his federal constitutional due process rights; the arbitrator exceeded his authority by basing his decision on the terminated and superseded TICA, rewriting the parties' agreements upon summarily and irrationally adopting respondents' attorney's deliberate and selective misreading of the TICA, and permanently enjoining appellant from interfering with the forced sale of his condominium; the award violated public policy favoring arbitration, particularly in light of the TICA's attorney fee provision, which incentivized respondents' attorney's improper actions; the award of attorney fees violated the rules of professional responsibility and was unenforceable in light of respondents' attorney's bad faith efforts "to prevail at any cost and to exploit the fee provision for a big pay day"; the award violated public policies favoring waiver of fees and costs for indigent litigants such as himself and of following court orders; and the award had been procured by corruption, fraud, and undue means engaged in by respondents' attorney, who, along with misrepresenting the parties' agreements, misrepresented the facts to argue that appellant had committed actionable violations of the TICA and smear appellant's character and reputation.

Respondents countered each of appellant's claims. Among other things, they argued appellant was improperly repeating his arguments about the purported termination of the TICA and the superseding effect of the CC&Rs, which he had previously made in opposition to respondents' petition to compel arbitration and which the court previously rejected in a ruling that was final and binding on appellant. There was no due process violation, as appellant had not offered or requested to present oral testimony at the

petition to compel arbitration hearing. The arbitrator had not exceeded his authority nor rewritten the parties' agreements, as respondents were entitled to seek remedies for breaches of the TICA whether or not it had terminated, and the arbitrator was empowered to enjoin appellant. The award did not violate public policy, nor was it procured by corruption, fraud, or undue means. Finally, they contended that many of appellant's arguments addressed the merits of issues already considered in the arbitration in which appellant had refused to participate, were not proper subjects for the court's consideration in determining whether to confirm or vacate the award, and were presented by a vexatious litigant who sought to delay resolution of the dispute for as long as possible.

The court issued a tentative ruling granting respondents' petition and denying appellant's, following which argument from both sides was presented at a hearing. There was no mention of appellant's notices to present oral testimony. After the hearing, the court denied appellant's petition to vacate and confirmed the arbitration award in all respects, in a written order issued in April 2011. The court ordered the sale of appellant's condominium; required him via injunction to cooperate in the listing, marketing, and sale of it in accordance with the TICA; ordered that any remaining judgment liens be paid from the proceeds of the sale to the extent there was money remaining after payment of appellant's portion of the shared mortgage, shared sale, and other sums provided for in the TICA; and ordered that, if there was money remaining after such payments, respondents' awarded damages, attorney fees, and costs also be paid out of the proceeds. The court also awarded respondents interest on their arbitration award, their motion to confirm fee, and $4,500 in attorney fees related to their petition to confirm.

After entry of judgment, appellant, now represented by legal counsel, Patrick Missud, filed a timely notice of appeal.

Early in this appeal, respondents moved for an order requiring appellant to furnish security as a vexatious litigant pursuant to Code of Civil Procedure section 391.1.[1] We

---

[1] All of our statutory references are to the Code of Civil Procedure, unless otherwise stated.

9

denied the motion because respondents are not "defendants" and appellant is not a "plaintiff," as these terms are used in section 391.1.

Appellant's briefings to this court were submitted via his counsel, Patrick Missud. Appellant represented himself at oral argument.

## DISCUSSION

Appellant asserts numerous errors occurred below, and in his opening brief, argues three categories of reversible errors: (1) the superior court and/or the arbitrator did not properly determine the existence of a valid arbitration agreement or follow required procedures to do so, and respondents did not meet their burden of proving a valid arbitration agreement existed; (2) the arbitration, attorney fee, and forced sale provisions of the TICA are unenforceable, either because they are unconscionable and/or voidable as against public policy; and (3) respondents' attorney committed fraud in the execution of the TICA and/or CC&Rs.

More specifically, appellant's arguments include contentions that the superior court erred in its October 2010 ruling granting respondents' petition to compel arbitration and in its April 2011 rulings confirming the award and rejecting appellant's petition to vacate the award. Appellant makes some of these contentions without identifying the particular error appealed from. He clarifies the scope of his appeal in his reply brief, stating that it "is not taken from the October 19, 2010 'order to compel arbitration,' but from the denial of his '[petition] to vacate the arbitration award' on April 13, 2011," which included claims that the court had erred in its October 2010 rulings. At oral argument, he confirmed that his appeal was from the trial court's denial of his petition to vacate, and not from its prior grant of respondents' petition to compel arbitration.[2]

---

[2] It appears from appellant's briefing and statements at oral argument that he may have concluded he is not entitled to appeal *at all* from the court's grant of respondents' petition to compel because section 1294 provides that a party may appeal only from an order dismissing or denying a petition to compel arbitration. However, a party may appeal *after judgment* from such a ruling. (E.g, *Kinecta Alternative Financial Solutions, Inc. v. Superior Court* (2012) 205 Cal.App.4th 506, 513 [indicating that an immediate

10

## I. *General Rules of Appellate Review*

As a preliminary matter, and as pointed out by respondents, there are black-letter rules of appellate review relevant to our consideration of appellant's arguments. " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).)

"It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal." (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 (*Ochoa*) [regarding matters not considered or ruled on by the trial court].) Furthermore, as we stated recently in reviewing an appeal from an arbitrated dispute, " ' "[t]he rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal." ' " (*Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40, 53 (*Benjamin, Weill & Mazer*), quoting *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12].) Although we have the discretion to consider a purely legal question that rests on an uncontroverted record that could not have been altered by the presentation of additional evidence (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501), we decline to exercise this discretion here because " ' "to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." ' " (*Benjamin, Weill & Mazer*, at pp. 53-54.)

Also, we will not consider procedural defects or erroneous rulings " 'where an objection could have been but was not presented to the lower court by some appropriate method . . . .' " (*Doers v. Golden Gate Bridge Etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 (*Doers*).)

---

appeal of an order granting a petition to compel is not provided for by section 1294, but "lies only from the ultimate judgment confirming the arbitration award"].)

As for the briefs submitted, we disregard factual assertions and legal arguments for which proper support is not provided. "A reviewing court must accept and is bound by the record before it [citations], cannot properly consider matters not in the record [citations], and will disregard statements of alleged facts in the briefs on appeal which are not contained in the record." (*Weller v. Chavarria* (1965) 233 Cal.App.2d 234, 246 (*Weller*).) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) "[C]onclusory claims of error will fail." (*Ibid.*) We may consider factual or legal claims that are unsupported by citations to the record or legal authority as waived. (*Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379 (*Grant-Burton*) [regarding unsupported factual assertions]; (*People v. Stanley* (1995) 10 Cal.4th 764, 793 (*Stanley*) [regarding unsupported legal arguments].)

## II. *Standard of Review Regarding a Petition to Vacate an Arbitration Award*

Regarding the standard of review, "Title 9 of the Code of Civil Procedure . . . represents a comprehensive statutory scheme regulating private arbitration in this state. (§ 1280 et seq.) Through this detailed statutory scheme, the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.] Consequently, courts will ' "indulge every intendment to give effect to such proceedings." ' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).)

Assuming an enforceable arbitration agreement exists, "it is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final." (*Moncharsh*, *supra*, 3 Cal.4th at p. 9 & fn. 3.) "Moreover, '[a]rbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action.' " (*Id*. at pp. 10-11.) Therefore, subject to "limited exceptions" "an arbitrator's

12

decision cannot be reviewed for errors of fact or law," "whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Id*. at pp. 6, 12.)

As for the limited exceptions, section 1286.2 sets forth the statutory grounds for vacation of an arbitration award. (*Moncharsh*, *supra*, 3 Cal.4th at p. 12.) These include two asserted by appellant. First, an award can be vacated if "[t]he arbitrators exceeded their powers." (§ 1286.2, subd. (a)(4).) Second, an award can be vacated if it "was procured by corruption, fraud or other means." (§ 1286.2, subds. (a)(2).) Also, because revocation of a contract is a ground for avoiding arbitration (§ 1281.2, subd. (b)), "if an otherwise enforceable arbitration agreement is contained in an illegal contract, a party may avoid arbitration altogether." (*Moncharsh*, at p. 29.)

On appeal from a ruling regarding a petition to vacate an arbitration award, "we review the trial court's order (not the arbitration award) under a de novo standard. [Citation.] To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues." (*Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 55.)

### III. *Appellant Was Not Entitled to Relitigate the Validity of the TICA Arbitration Agreement in His Petition to Vacate the Arbitration Award*

A number of appellant's arguments challenge the superior court's October 2010 ruling that the TICA contained a valid arbitration agreement, and the procedures used, or not used, by the court to determine this. He also challenges the propriety of the superior court's April 2011 denial of his petition to vacate, claiming the court improperly reviewed and denied his petition regardless of any previous ruling.

Respondents argue that appellant, in his petition to vacate, could not relitigate whether the TICA contained a valid arbitration agreement in light of the court's previous determination that it did, for two reasons: this was tantamount to bringing a motion for reconsideration under section 1008, and appellant did not meet that statute's requirements for such a motion; and second, section 1286.2, which defines and limits the grounds upon which an arbitration award may be vacated, does not authorize relitigating such issues when they are already heard and decided on a petition to compel arbitration.

13

We agree with respondents that section 1286.2 did not authorize appellant to relitigate the validity of the TICA arbitration agreement in support of his petition to vacate because the court had already considered the parties' arguments on the issue and decided a valid TICA arbitration agreement existed.

As we have indicated, the Legislature has created a comprehensive statutory scheme in title 9 of the Code of Civil Procedure regulating private arbitration in California. (*Moncharsh*, *supra*, 3 Cal.4th at p. 9.) Because of the strong public policy favoring arbitration, judicial review of arbitration awards for purposes of vacating them is restricted to the grounds stated in section 1286.2. (*Moncharsh*, at pp. 27-28.) Questions about the validity of an arbitration agreement are recognized in the grounds for denying a petition to compel arbitration stated in section 1281.2, which provides that the court "shall order the petitioner and respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that," among other things, "[g]rounds exist for the revocation of the agreement." (§ 1281.2, subd. (b).)

However, there is no such provision in section 1286.2, which states the grounds upon which an arbitration award may be vacated. (*Moncharsh*, *supra*, 3 Cal.4th at p. 12.) Appellant argues he may raise his "invalidity" issues in his petition to vacate because, if there was not a valid arbitration agreement, the arbitrator had no authority to issue any award, in claimed support of which appellant cites our Supreme Court's ruling in *Loving & Evans v. Blick* (1949) 33 Cal.2d 603 (*Loving*). It does not avail him.

It is true, as appellant points out, that the *Loving* court stated, "The question of the validity of the basic contract being essentially a judicial question, it remains such whether it is presented in a proceeding 'for an order directing . . . arbitration' under section 1282 . . . or in a proceeding 'for an order confirming' or 'vacating an award' under sections 1287 and 1288[.]" (*Loving*, *supra*, 33 Cal.2d at p. 610.) In *Moncharsh*, our Supreme Court summarized *Loving a*s follows: "*Loving* . . . involved a dispute about money due on a construction contract for remodeling done on appellant Blick's premises. In his pleading before the arbitrator, Blick claimed as a 'separate and special defense' that respondent contractors could not legally recover because they were unlicensed in

14

violation of the Business and Professions Code. The arbitrator found in respondents' favor, and they moved to confirm the award. Blick objected to the award on grounds that one of the respondents was unlicensed in violation of the code. The trial court granted the motion to confirm, but that judgment was reversed by this court. Although we recognized the general rule that the merits of a dispute before an arbitrator are not subject to judicial review, 'the rules which give finality to the arbitrator's determination of ordinary questions of fact or of law are inapplicable *where the issue of illegality of the entire transaction* is raised in a proceeding for the enforcement of the arbitrator's award.' ([*Loving*,] at p. 609, italics added.)" (*Moncharsh*, *supra*, 3 Cal.4th at p. 31.) Thus, *Loving* "permitted judicial review of an arbitrator's ruling where a party claimed the entire contract or transaction was illegal." (*Moncharsh,* at p. 32.)

Respondents argue that it is incorrect to assert that *Loving* stands for the proposition that the validity of a contract can be litigated on a petition to compel arbitration *and again* on a petition to vacate. They correctly point out that *Loving* did not involve a petition to compel arbitration because the parties voluntarily arbitrated their dispute pursuant to a contractual agreement. (*Loving*, *supra*, 33 Cal.2d at p. 604.) They also argue that the exception created to the limits of section 1286.2, as discussed in *Moncharsh*, was because of the illegality of the entire contract or transaction, and that *Loving* is inapposite because appellant does not claim the TICA was entirely illegal.

Appellant replies that the court could not compel him to arbitration because the TICA was invalid and that *Loving*, by its plain language, dealt with the validity of a contract. According to appellant, "[t]o read the word 'validity' as applying only to contracts that are 'invalid' because they are 'illegal' as opposed to terminated, superseded, or voluntarily rescinded would render *Loving* meaningless."

We disagree with appellant that *Loving* applies to his circumstances. In his petition to vacate, appellant did not argue the TICA or the parties' transaction was illegal, but only—and however conclusorily—that the otherwise valid TICA had terminated and been superseded as a result of the recording of the CC&Rs and condominium grant deeds. Therefore, we are not persuaded that the "illegality" exception—which relies

15

heavily on the public policy against illegal contracts and transactions—applies to appellant's "invalidity" argument.

More importantly, regardless of whether this "illegality" exception applies to an "invalidity" argument, it would not apply to the present circumstances, where the superior court had previously determined a valid arbitration agreement existed in granting respondents' petition to compel arbitration.  The *Loving* court never addressed whether a party can *relitigate* in a petition to vacate the validity of an arbitration agreement when the issue had already been decided in a petition to compel, since the circumstances before it did not involve such a prior determination.  However, in *Toal v. Tardif* (2009) 178 Cal.App.4th 1208 (*Toal*), a case cited by appellant in his opening brief, the court stated that it "may not confirm an award without first finding the parties agreed in writing to arbitrate their dispute, *unless a judicial determination of the issue has already been made (e.g., by a court considering a petition to compel arbitration)*."  (*Id*. at p. 1220, italics added.)[3]  Its plain import is that a superior court's prior determination that a valid arbitration agreement exists will not be relitigated in that court in the course of determining whether or not to vacate or confirm an arbitration award.

Furthermore, in *Moncharsh*, *supra*, 3 Cal.4th 1, another case repeatedly cited by the parties, but in a passage not specifically discussed by them, our Supreme Court suggested that a party must raise the illegality of an entire contract prior to arbitration, or waive the issue on appeal.  Moncharsh, a lawyer, and his former law firm submitted their dispute to arbitration.  (*Id*. at p. 6.)  Moncharsh first argued in the arbitration, and afterwards, that a fee splitting provision in his employment agreement was unenforceable and illegal.  (*Id*. at pp. 6-8, 29.)  He filed a petition to vacate the award and modify it, which was denied, and then appealed.[4]  (*Id*. at p. 8.)

---

[3]  Although neither party refers to this particular passage in their appellate papers, respondents quoted it in their opposition to appellant's petition to vacate.

[4]  Although *Moncharsh* does not expressly state that Moncharsh repeated his illegality argument in his petition to vacate, it indicates he raised the argument in the arbitration and on appeal (*Moncharsh*, *supra*, 3 Cal.4th at p. 8), making it likely he included it in his petition to vacate as well.

16

The *Moncharsh* court rejected the law firm's argument that Moncharsh had waived his illegality issue on appeal by not objecting to the arbitration on this ground prior to the arbitration, but not because Moncharsh raised the issue in the lower court after the arbitration. (*Moncharsh, supra,* 3 Cal.4th at p. 29.) Instead, the court reasoned that, since Moncharsh's illegality claim went to only a part of the agreement (not including the arbitration clause), it remained arbitrable in the first instance. (*Ibid*.) The court concluded, "Thus, Moncharsh was not required to first raise the issue of illegality in the trial court in order to preserve the issue for later judicial review." (*Id*. at p. 30*.*) The court continued, "We thus hold that *unless* a party is claiming (i) the entire contract is illegal, or (ii) the arbitration agreement itself is illegal, *he or she need not raise the illegality question prior to participating in the arbitration process*, so long as the issue is raised before the arbitrator." (*Id*. at p. 31, italics added.) The plain import of this discussion is that where a party *does* contend an entire contract or arbitration clause is illegal, the party must raise the issue prior to the arbitration or waive the matter on appeal.

As we have discussed, appellant contends his claim the TICA arbitration agreement was invalid is equivalent to an "illegality" claim. Whether or not this is correct, we conclude, pursuant to the statutory limitations of section 1286.2, as indicated in *Toal*, and as suggested in *Moncharsh*, appellant was not entitled to relitigate the issue in his petition to vacate. We now review his specific arguments with this conclusion in mind.

### IV. *The Determination that a Valid Agreement to Arbitrate Existed*

Appellant makes three arguments why there were errors below in determining a valid arbitration agreement existed. None has merit.

### A. *Appellant Does Not Establish the Court's October 2010 Ruling Was in Error*

Appellant first argues that the trial court erred in its October 2010 order granting respondents' petition to compel arbitration. He asserts this ruling was predicated only on the TICA and not also on the CC&Rs. He also argues that the court never considered if a valid arbitration agreement existed, inappropriately shifted the burden of proof onto

17

appellant regarding whether a valid agreement existed, and did not reconcile the TICA with the parties' mutual intent in signing the CC&Rs or grant deeds.

Appellant correctly quotes our Supreme Court's instruction that, "when a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable. Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*).) However, appellant expressly states that he does not appeal from the court's grant of respondents' petition to compel arbitration, but from its denial of his petition to vacate the arbitration award.

The record indicates appellant made arguments below regarding his petition to vacate that are similar to some of his appellate arguments. However, appellant does not discuss how the court erred in April 2011 in denying his petition to vacate, the only ruling from which appellant indicates he is appealing. For this reason alone, appellant has waived this appellate claim. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

Furthermore, we conclude, based on the restrictions for vacating an arbitration award contained in section 1286.2, as well as the discussions in *Toal* and *Moncharsh,* that appellant was not entitled to raise these arguments in his petition to vacate.

In any event, and contrary to appellant's assertion, the record indicates that in October 2010, the court did determine a valid arbitration agreement existed. Its written order indicates it did so after consideration of all of the parties' arguments, including appellant's "question" about the TICA's continued viability and his contention that there was an "inherent ambiguity" caused by the parties' conversion of the property into condominiums subject to CC&Rs recorded in September 2009. The court concluded that appellant has signed the TICA, "which contains a clear and unambiguous arbitration agreement." Appellant fails to explain why this was not a sufficient finding by the court

18

that a valid arbitration agreement existed, particularly in light of the fact that, as pointed out by respondents in their reply below, appellant's contentions were not supported by proper declarations (see, e.g., Cal. Rules of Court, rule 3.1306 ["[e]vidence received at a law and motion hearing must be by declaration or request for judicial notice without testimony or cross-examination, unless the court orders otherwise for good cause shown"])—not to mention appellant's failure to submit the CC&Rs for the court's review.[5]  We conclude the court's finding was sufficient.

Appellant also argues that in October 2010, the superior court inappropriately shifted the burden of proof to him in determining whether a valid arbitration agreement existed, pointing to the statement in its written order that appellant "fails to show that the arbitration agreement is invalid or unenforceable."  This contention is unpersuasive because it ignores the court's finding, stated just before this sentence, that the TICA contained "a clear and unambiguous arbitration agreement."  The court's reference to appellant's failure merely indicated he did not establish a defense to its enforcement.  "[T]he plain meaning of section 1281.2 requires enforcement of the arbitration agreement unless there exist grounds for revocation of that agreement."  (*Moncharsh*, *supra*, 3 Cal.4th at p. 29, italics omitted.)  "If the party opposing the petition raises a defense to enforcement—either fraud in the execution voiding the agreement, or a statutory defense of waiver or revocation [citation]—that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense."  (*Rosenthal*, *supra*, 14 Cal.4th at p. 413.)  There was nothing improper about this aspect of the superior court's finding.

### B. *Appellant Does Not Establish The Court's April 2011 Ruling Was in Error*

Appellant also briefly argues that the superior court erred in April 2011 when it confirmed the arbitration award and denied his petition to vacate because he submitted

---

[5]  Appellant contends that the CC&Rs were "incorporated by reference" into his opposition to respondents' petition to compel.  This contention, which does not explain why the court should consider submissions that are not supported by proper declarations or accompanied by requests for judicial notice, does nothing to explain how the court could or should have taken notice of the *contents* of the CC&Rs.

19

the CC&Rs as part of his papers. According to appellant, "[d]espite the obvious ambiguity of the two documents, the trial judge simply rubber stamped the arbitrator's award. She made no attempt to interpret, construe, or reconcile the two conflicting contracts or ascertain the 'mutual intent' of the parties." This argument, too, is unpersuasive.

As we have discussed, given the court's prior conclusion that a valid arbitration agreement existed based on the arguments presented by the parties on the petition to compel arbitration, appellant was not entitled to challenge its validity in his petition to vacate. (§ 1286.2; *Toal*, *supra*, 178 Cal.App.4th at p. 1220; *Moncharsh*, *supra*, 3 Cal.4th at pp. 29-31.)

Furthermore, appellant's conclusory argument, that the superior court somehow erred simply because he submitted the CC&Rs for its consideration, without explaining what about the content of the CC&Rs should have concerned the court or if any law supports his position, necessarily fails, as appellant does not affirmatively show any error. (*Denham*, *supra*, 2 Cal.3d at p. 564.)

## C. *Respondents Sustained Their Burden of Showing the TICA Was the Governing Contract*

Appellant also argues that, in light of the existence of both the TICA and the CC&Rs, respondents did not sustain their burden of showing by a preponderance of the evidence that there was a valid arbitration agreement between the parties. Although he does not expressly indicate, he appears to be referring to respondents' burden in their petition to compel. We reject appellant's argument for several reasons.

First, although he states that he appeals only from the court's April 2011 denial of his petition to vacate, appellant does not discuss how the court erred at that time in rejecting such arguments. Thus, appellant has waived this appellate claim. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

Second, as we have discussed, under the circumstances of this case appellant could not relitigate in his petition to vacate the court's previous determination of the validity of

20

the TICA arbitration agreement.  (§ 1286.2; *Toal*, *supra*, 178 Cal.App.4th at p. 1220; *Moncharsh*, *supra*, 3 Cal.4th at pp. 29-31.)

Third, even assuming he did appeal from the superior court's petition to compel ruling, appellant's arguments are unpersuasive.  He argues respondents' attorney did not prove the existence of the TICA arbitration agreement because he did not also submit the CC&Rs to the court.  Appellant makes the unsupported claims that the attorney, by not submitting the CC&Rs to the court in the petition to compel arbitration, somehow "suppressed" the CC&Rs, and engaged in a lack of good faith—indeed, possibly actionable fraud.  This argument, unaccompanied by any meaningful legal argument, amounts to an ad hominem attack on opposing counsel that has no place in this discussion.  We will not further discuss these attacks, which are repeated throughout appellant's briefs, other than to state that we have reviewed the entire record and have found nothing untoward about respondents' attorney's conduct in the proceedings below.  Respondents maintained they were bringing claims pursuant to the TICA, and that the CC&Rs was not relevant to their claims.  Based on this theory of the case, we see no reason why respondents were required to submit the CC&Rs to the court for review.  Conversely, we see no reason why appellant could not submit them to the court himself as part of his opposition, with whatever argument he might have about their relevance.

As for appellant's legal arguments, he contends respondents' attorney was required to submit the CC&Rs to the court pursuant to California Rules of Court, rule 3.1330, which rule states:  "A petition to compel arbitration . . . pursuant to . . . section[ ] 1281.2 . . . must state, in addition to other required allegations, the provisions of the written agreement and the paragraph that provides for arbitration.  The provisions must be stated verbatim or a copy must be attached to the petition and incorporated by reference."  (Cal. Rules of Court, rule 3.1330.)

Respondents did all that was required by this rule by submitting the TICA to the court via a proper declaration by respondent Coombs.  Appellant argues that counsel was required to do more.  He relies on no legal authority, other than the language of the rule itself.  There is no merit in this argument in light of the plain language of the rule.  It does

21

not require a party to submit other contractual documents to the court that the party is *not* relying upon and considers irrelevant to whether a valid arbitration agreement exists between the parties. If appellant thought the CC&Rs were relevant to whether a valid arbitration agreement existed between the parties, he was free to submit them with pertinent facts and argument to the court in opposition to respondents' petition to compel arbitration. He did not do so.

Appellant next argues respondents' attorney attempted to improperly unbind his clients from the CC&Rs and condominium grant deeds "by pretending they don't exist." This makes no sense. Appellant fails to establish that respondents pretended these documents did not exist; again, they simply considered them not relevant to whether a valid arbitration agreement existed between the parties.

Appellant next argues respondents' attorney failed to carry the burden of showing the TICA was *not* terminated "by condo-conversion, the superseding CC&Rs, or operation of law." We can think of no reason why respondents were required under the circumstances of this case to prove that the TICA was *not* terminated as part of their petition to compel arbitration. Nothing on the face of the TICA indicated it was terminated; to the contrary, the TICA contains a provision, section 9.6, requiring the parties to refinance their condominiums upon notice by one of the parties, which provision indicates the TICA did *not* automatically terminate and was not superseded by the subsequent execution of CC&Rs or conversion of the units into condominiums. Respondents argue that appellant's contentions about termination were in the nature of an affirmative defense. We agree. "An 'affirmative defense' is one which 'sets forth facts from which it results that, notwithstanding the truth of the allegations of the complaint, no cause of action existed in the plaintiff at the time the action was brought.' " (*Salazar v. Maradeaga* (1992) 10 Cal.App.4th Supp. 1, 5.) Appellant's termination claim fits this definition.

In arguing respondents' attorney did not carry his burden, appellant contends the TICA terminated pursuant to its own provisions. However, he did not raise these contentions in opposing respondents' petition to compel, thereby waiving them. (*Ochoa*,

22

*supra*, 61 Cal.App.4th at p. 1488, fn. 3; *Benjamin, Weill & Mazer*, *supra*, 195 Cal.App.4th at p. 53.)

In any event, appellant's contentions are unpersuasive. He asserts respondents' attorney ignored subsection (C) of the TICA's termination section, section 15.4. Section 15.4 provides that the TICA binds the parties for 90 years or until one of four events occurs, one of which is that "[t]he Cotenants explicitly agree in writing to no longer be bound by this Agreement" (subsection (C), entitled "Replacement by Agreement"). Appellant argues that the parties, by creating a condominium project pursuant to Civil Code section 1352 via the recording of the CC&Rs in September 2009, agreed to no longer be bound by the TICA, and that "[t]o read the language 'explicitly agree' [in subsection (C) of TICA's section 15.4] as requiring the parties to 'denounce' the [TICA] is unreasonable." The plain language of a contract controls. (Civ. Code, § 1638; *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1605.) Appellant fails to show how the parties' entry into the CC&Rs is relevant to whether or not they "explicitly agree[d] in writing" to no longer be bound by the TICA.

Appellant also contends respondents' attorney ignored subsection (D) of section 15.4 of the TICA, which provides for the TICA's termination if it "is superseded or lapses by operation of law." According to appellant, the TICA was terminated by "operation of law" when the parties created a "condominium project" pursuant to Civil Code section 1352 and recorded their declaration. As respondents point out, nothing in the language of Civil Code section 1352 suggests that previous agreements about a property between parties are terminated by operation of law as a result of the creation of a condominium project.[6] Appellant does not establish otherwise.

---

[6] Civil Code section 1352 states:

"This title applies and a common interest development is created whenever a separate interest coupled with an interest in the common area or membership in the association is, or has been, conveyed, provided, all of the following are recorded:

"(a) A declaration.

"(b) A condominium plan, if any exists.

23

Next, appellant contends the TICA terminated pursuant to subsection (B) of section 15.4 of the TICA, which provides for the TICA's termination if "[t]he Property is converted to condominiums, ownership of the condominiums is distributed in accordance with this Agreement, and all debts and obligations of the TC [defined elsewhere as 'the group of Cotenants described in this Agreement'] are satisfied." According to appellant, this court "should disregard the arbitrator's finding in their entirety or allow [appellant] to rebut them" because of his allegations that respondent's attorney "has misrepresented the law," concealed information, and manufactured the claims for the purpose of obtaining a ruling that would apply the 'terminated' [TICA] with its 'unlimited fee' provision for 'prevailing parties,' rather than the superseding CC&Rs and Bylaws."[7] In other words, appellant seeks to relitigate the entire dispute before this court in order to prove that the TICA terminated and the CC&Rs control. We conclude this would be inappropriate under the circumstances. Appellant's claim is centered around his contentions that respondents' attorney purportedly concealed the CC&Rs from the superior court and suppressed discussion of them. Even if he were appealing from the October 2010 order granting the petition to compel—which he is not—and had not waived this argument—which he has, appellant has not established from the record that respondents' attorney acted inappropriately in submitting only the TICA for the superior court's consideration.

Appellant also contends respondents' attorney did not prove "mutual intent" of the parties regarding the need to refinance after the condominium conversion. This is based on factual contentions for which he provides no citations to the record and, therefore, we will not discuss them further. (*Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379.)

Finally, appellant argues that the arbitrator's award of $5,000 in liquidated damages was less than what he "could" have been liable for if the TICA continued to

---

"(c) A final map or parcel map, if Division 2 (commencing with Section 66410) of Title 7 of the Government Code requires the recording of either a final map or parcel map for the common interest development."

[7] Appellant also contends we should consider his rebuttal arguments because he purportedly was not allowed to provide rebuttal evidence or call witnesses below, which contentions we address in subpart V, *post*.

apply after condominium conversion pursuant to section 9.2 of the TICA, and that the court should construe these provisions against respondent Coombs because his real estate agent purportedly drafted the document without input from appellant. These are conclusory arguments not properly supported by citations to either the record or meaningful legal authority. Thus, we disregard them. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

### V. *Appellant's Claims of Procedural Error*

We next turn to appellant's contentions that the superior court and/or the arbitrator engaged in various procedural errors that require reversal.

### A. *Appellant Does Not Establish that the Court or the Arbitrator Abused Their Discretion in Determining the Scope of the Arbitration Agreement*

Appellant argues that the superior court, in its October 2010 ruling, and/or the arbitrator abused their discretion by not following mandated procedures for determining the scope of the TICA arbitration agreement. Appellant relies on Justice Kennard's concurring opinion in *Rosenthal*, *supra*, 14 Cal.4th 394, in which she wrote, "if a party contends that a claim submitted for arbitration is outside the scope of the arbitration agreement, the arbitrator should decide that question first. If the arbitrator decides that the claim is not arbitrable under the arbitration agreement, the arbitrator should then issue a decision to that effect and leave the claim for judicial resolution. . . . [I]f an arbitrator decides that, because of misrepresentations by the defendants as to the nature of the . . . agreement signed by a given plaintiff, the . . . agreement should be rescinded or equitably reformed to delete the arbitration clause, the logical consequence is that the arbitrator should then refuse to decide the merits of the plaintiff's other claims and leave them for judicial resolution." (*Id*. at p. 433, conc. opn. of Kennard, J.)

We reject appellant's argument for several reasons.

First, as noted, appellant states that he appeals only from the court's April 2011 denial of his petition to vacate. However, he does not discuss how the court erred at that

time in rejecting such arguments. For this reason alone, we disregard his arguments. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

Second, to the extent appellant sought in his petition to vacate to relitigate the court's prior ruling regarding the validity of the arbitration agreement, this was improper. (§ 1286.2; *Toal*, *supra*, 178 Cal.App.4th at p. 1220; *Moncharsh*, *supra*, 3 Cal.4th at pp. 29-31.)

Third, appellant's contentions are based on the presumption that he properly objected to the scope of the TICA arbitration agreement in his opposition to respondents' petition to compel, thereby requiring both the superior court and the arbitrator to follow the procedures outlined by Justice Kennard. He does not establish that he did. He conclusorily asserts that he "objected from the start to applying the [TICA] after conversion" to the superior court, without providing any citation to the record. And the record indicates that he raised only a tentative, general question about the continued viability of the TICA in light of the purported recording of CC&Rs and condominium grant deeds and referred vaguely to an "inherent ambiguity" caused by the two agreements, without submitting evidence properly by declaration, submitting the CC&Rs to the court for its review, arguing that the TICA was terminated or superseded, or contending that any of the claims raised by respondents were beyond the scope of the TICA.

Similarly, appellant asserts the arbitrator was on notice that appellant challenged the scope of the TICA arbitration agreement because, even though appellant did not participate in the arbitration, he sent emails to the arbitration service prior to its commencement objecting to the forced sale of his condominium and imposition of the TICA, alleging respondent Coombs had committed numerous frauds in the execution of their agreement, and denying the applicability of the TICA. However, appellant does not establish these emails are in the record. His only citation is to a proposed augmented record he moved to submit to this court, which this court denied.

Appellant also asserts the arbitrator should have known appellant had an issue with the scope of the TICA because of his refusal to attend the arbitration and that this

26

somehow obligated the arbitrator to consider the scope issue. Appellant does not present any meaningful legal argument in support of this position and, therefore, we will disregard it as well. (*Stanley*, *supra*, 10 Cal.4th at p. 793.)

Appellant further argues the arbitrator, when he reviewed the references in the forced sale provision of the TICA to "cotenants" and the forced sale of the defaulting cotenant's "cotenancy share," "should have realized that the 'reality' of condo-conversion rendered this language meaningless," considered the scope issue, "asked if [respondents' attorney] was suppressing the existence of a second contract, and, at the least, pursuant to our Supreme Court's directive that the issue of scope is one for judicial determination, remanded the case to the superior court to determine what claims were inside or outside the scope of the TICA and the CC&Rs." Again, appellant provides no meaningful factual or legal support for this argument. Again, we disregard it. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

## B. *Appellant Does Not Establish The Superior Court's Use of Summary Procedures Violated His Due Process Rights*

Appellant argues that his due process rights under the Fourteenth Amendment of the United States Constitution were violated by the superior court's October 2010 determination of the existence of a valid arbitration agreement via its tentative ruling and the use of summary procedures. His arguments are unpersuasive for several reasons.

Appellant correctly acknowledges that in *Rosenthal*, *supra*, 14 Cal.4th 394, our Supreme Court rejected the argument that the summary hearing procedures of sections 1291.2 and 1290.2 deprived the plaintiffs of due process. The court did so in part because, although the plaintiffs raised the possibility that an early petition to compel hearing could occur before they had an opportunity for discovery, they did not actually assert they had insufficient time to conduct discovery or been refused discovery of any matter pertinent to the enforceability of the arbitration clause or necessary to their opposition to the petition. (*Rosenthal*, at pp. 412-413.) Appellant, however, contends the facts of his case are distinguishable from *Rosenthal*.

First, appellant argues that, "[g]iven the use of 'summary procedures' made on the basis of 'declarations,' coupled with [respondent's] attorney's suppression of the CC&Rs, [appellant] was not given sufficient 'notice' of what weight or relevance the trial judge would assign to the 'declarations' in her tentative ruling." Appellant further claims the fact that the court was not required to provide a statement of decision compounded this purported notice problem, since appellant did not know the basis for the court's tentative ruling that he had signed a clear and unambiguous agreement to arbitrate, particularly because the parties had also signed the unambiguous CC&Rs and condominium grant deeds. And so, appellant concludes, under these circumstances, he had "no clear way forward to *oppose* the tentative ruling the *next morning*."

Second, appellant argues the 10 days provided for his response to the petition pursuant to section 1290.6 was insufficient for him to prepare a sufficient response. He could not in this time gather the evidence he needed to prove respondents had engaged in certain code violations and fraudulent conduct that supported his defense to the enforceability of the TICA. He also did not have time to call respondents, who he contends were "indispensable witnesses" to testify about their mutual intent in signing the CC&Rs.

Third, appellant, relying on *Rosenthal*, *supra*, 14 Cal.4th 394 and *Elkins v. Superior Court* (2007) 41 Cal.4th 1337 (*Elkins*), argues that since the existence of a valid contract is a statutory prerequisite to compelling arbitration, it violates due process to decide the issue by using tentative or summary procedures.

Fourth, appellant contends respondents' attorney concealed the existence of the CC&Rs, suppressed any discussion of them, and refused to comply with meet and confer requirements before filing his motion, which cover-up was enabled by the use of summary procedures.

Fifth, appellant contends he was unfairly denied discovery by the use of tentative rulings and summary procedures. He contends that without discovery or subpoenas, he could not prove the facts he needed to oppose the arbitration.

28

Appellant's arguments fail for numerous reasons. First, although appellant states that he appeals only from the April 2011 denial of his petition to vacate, he does not discuss how the court erred at that time in rejecting such arguments about the court's October 2010 ruling. Thus, appellant has waived this appellate claim. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

Second, appellant presents his five arguments in a conclusory fashion, without providing meaningful citations to facts in the record and/or legal authority. For example, he does not cite to anything in the record which indicates he made any effort to conduct discovery, but was denied the opportunity. Nor does he provide relevant legal authority suggesting he was deprived of any rights by the court's use of standard motion procedures. Therefore, we can, and do, disregard his arguments. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

Third, as we have already discussed, appellant was not entitled to relitigate the validity of the arbitration agreement in his petition to vacate, which denial is the only ruling from which he has appealed. (§ 1286.2; *Toal*, *supra*, 178 Cal.App.4th at p. 1220; *Moncharsh*, *supra*, 3 Cal.4th at pp. 29-31.)

Fourth, appellant did not raise any of these issues in his opposition to respondents' petition to compel arbitration, and, thus, waived them. (*Ochoa*, *supra*, 61 Cal.App.4th at p. 1488, fn. 3; *Benjamin, Weill & Mazer*, *supra*, 195 Cal.App.4th at p. 53.)

Fifth, as respondents correctly point out, *Rosenthal* and *Elkins* provide no support for appellant's position that the validity of an arbitration agreement cannot be determined via tentative rulings and summary procedures. To the contrary, the *Rosenthal* court held that the issue *can* be determined by the court via summary procedures in the manner provided for the hearing and deciding of motions, on the basis of affidavits or declarations, and without a jury, all without violating any rights to due process or a jury

29

trial under the California Constitution[8] (although it held that a trial court has the discretion to resolve material conflicts in the written evidence by hearing live testimony, a matter we discuss further, *post*). (*Rosenthal*, *supra*, 14 Cal.4th at pp. 410-414.)

The *Elkins* court ruled that evidence in marriage dissolution *trials* could not be limited to written declarations because such trials were required to follow the same general statutory rules of procedure governing civil trials. (*Elkins*, *supra*, 41 Cal.4th at p. 1345.) The court's decision was based on statutory, not constitutional, considerations regarding trials, statutes that have no relevance to the present case. (*Ibid*.) Indeed, the *Elkins* court recognized as a statutory exception to the hearsay rule that courts were permitted to rely on affidavits in certain motion matters. (*Id*. at p. 1355.)

Finally, there was nothing unusual about the court's tentative ruling or summary procedures.

## C. *The Superior Court Did Not Err By Not Holding Evidentiary Hearings*

Appellant also argues that the superior court erred in October 2010, and again in April 2011, when it did not hold an evidentiary hearing with oral testimony on the matter of the existence and scope of a valid arbitration agreement.

### 1. *The Superior Court Did Not Err in October 2010 By Not Holding a Full Evidentiary Hearing*

The gist of appellant's abuse of discretion argument is that the superior court in October 2010, "[c]onfronted with the existence of two contracts with distinct remedies and rights, one related to 'tenants-in-common' and the other to 'owners' of condominium . . . erred in compelling arbitration before an evidentiary hearing." He asserts the court "should have recognized that the circumstances of his case created an 'ambiguity' in [California Rules of Court, rule] 3.1330," in that respondents' attorney should have been required to attach both the TICA and CC&Rs, and that his failure to do so "was an attempt to mislead the court. The trial judge should have inquired why [respondents']

---

**8** The California Constitution contains a due process guarantee similar to that of the federal Constitution. (*Anchor Pacifica Management Co. v. Green* (2012) 205 Cal.App.4th 232, 239 [reviewing Cal. Const., art I, § 7, subd. (a)].)

attorney believed the [TICA] rather than the CC&Rs were the governing document" and should have "ascertained the parties' 'consent.' " Furthermore, since this claimed gateway issue was fundamental, "the trial court erred in failing to conduct an evidentiary hearing with oral testimony from the parties regarding their mutual intent in signing the agreements."

Appellant cites *Rosenthal*, *supra*, 14 Cal.4th 394, for legal support, contending it held that a party opposing arbitration has "the right" to an evidentiary hearing when the enforceability of the arbitration clause depended on which of two highly conflicting factual accounts is to be believed, and that this "same right" should apply for the gateway existence and scope issues. He also cites *Elkins*, *supra*, 41 Cal.4th 1337 for the proposition that the court erred by relying on pleadings and declarations to determine the evidentiary fact of which of two contracts existed. The argument is unavailing.

To begin with, although appellant states that he appeals only from the April 2011 denial of his petition to vacate, once again he does not discuss how the court erred at that time in rejecting arguments about the October 2010 ruling. Again, waiver. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

Second, appellant presents his argument in a conclusory fashion, without providing meaningful citations to facts in the record and/or legal authority. For example, he does not cite to anything in the record which indicates the CC&Rs were submitted to the court in October 2011, or that he sought any evidentiary hearing (our review of the record indicates neither occurred), or that, in the absence of the CC&Rs or any such request by appellant, the court had any sua sponte duty to do anything more than it did. Therefore, we can, and do, disregard his argument. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

Third, as already discussed, appellant was not entitled to relitigate the validity of the arbitration agreement in his petition to vacate, the denial of which is the only ruling from which he has appealed. (§ 1286.2; *Toal*, *supra*, 178 Cal.App.4th at p. 1220; *Moncharsh*, *supra*, 3 Cal.4th at pp. 29-31.)

Fourth, the *Rosenthal* court did not establish a "right" to an evidentiary hearing. To the contrary, the court rejected such a concept, holding that "[t]here is simply no authority for the proposition that a trial court necessarily abuses its discretion, in a motion proceeding, by resolving evidentiary conflicts without hearing live testimony." (*Rosenthal*, *supra*, 14 Cal.4th at p. 414.)  Instead, the court limited its holding to the facts before it, as follows:  "where—as is common with allegations of fraud such as are made here—the enforceability of an arbitration clause may depend upon which of two sharply conflicting factual accounts is to be believed, the better course would normally be for the trial court to hear oral testimony and allow the parties the opportunity for cross-examination.  As the trial court here remarked, 'it's pretty difficult to weigh credibility without seeing the witnesses.' "  (*Ibid*.)

Therefore, the correct legal question is whether, under the circumstances, the superior court in October 2010 abused its discretion by not conducting a full evidentiary hearing.  We conclude it did not.  Not only did appellant not request such a hearing, but he did not raise an issue of law or fact sufficient to create a controversy regarding the interplay, if any, between the TICA on the one hand and what he contended was the recording of the CC&Rs and condominium grant deeds on the other.  The court was not presented with "sharply conflicting factual accounts."

Fifth, as we have discussed, appellant is incorrect in his interpretation of respondents' attorney's obligations pursuant to California Rules of Court, rule 3.1330; appellant does not establish respondents' attorney had a duty to submit the CC&Rs to the court or that he suppressed them.

Sixth, as we have also discussed, the discussion in *Elkins*, *supra*, 41 Cal.4th 1337 cited by appellant applies to marital dissolution *trials*, and not to petition to compel proceedings, which are subject to motion procedures regarding the submission of evidence via declarations.  (*Id*. at pp. 1345, 1355.)

## 2. *The Superior Court Did Not Err in April 2011 By Not Holding a Full Evidentiary Hearing*

Appellant next argues the court violated his due process rights by not providing a full evidentiary hearing regarding his April 2011 petition to vacate the arbitration award.

Appellant's briefing on the subject is less than clear, but it appears he argues several grounds for why the court should have held such an evidentiary hearing. None is persuasive.

First, appellant asserts he submitted the CC&Rs to the court as part of his petition and argued it had terminated the TICA. And in light of his right to raise the issue pursuant to *Loving*, *supra*, 33 Cal.2d 603, and there purportedly being two highly conflicting accounts about whether a valid arbitration agreement that necessitated a hearing pursuant to *Rosenthal*, *supra*, 14 Cal.4th 394, the court abused its discretion by not conducting such a hearing.

Second, appellant contends the superior court denied him the opportunity to present the oral testimony from Coombs and Woods regarding their mutual intent in signing the CC&Rs. He contends there was no showing in the record that the foundational question of mutual intent was answered at the October 2010 hearing or taken up by the arbitrator and, therefore, it should have been addressed by the court before ruling on his petition to vacate.

Third, appellant again contends respondents' attorney suppressed the existence of the CC&Rs and sought to deceive the court by not submitting them to the court. Appellant further contends the arbitration award was obtained as a result of corruption, fraud, or undue means as a result of the attorney's purported misrepresentations and concealments. Appellant further contends that he submitted exhibits to the court with his petition that "undermined" respondents' attorney's allegations that he had committed "actionable wrongs" under the TICA. Appellant concludes, "[g]iven [appellant's] 40 pages of memorandum and authorities and his declaration with numerous exhibits supporting his position and refuting [respondents'] attorney's allegation of 'actionable

33

wrongs,' the trial judge erred in failing to conduct an evidentiary hearing," based on *Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 762-766.)

We reject appellant's arguments for several reasons. First, as discussed, appellant was not entitled to relitigate the validity of the arbitration agreement in his petition to vacate, which denial is the only ruling from which he has appealed. (§ 1286.2; *Toal*, *supra*, 178 Cal.App.4th at p. 1220; *Moncharsh*, *supra*, 3 Cal.4th at pp. 29-31.) Therefore, the court in April 2011 had no duty to consider his arguments that the CC&Rs terminated the TICA or any "mutual" intent arguments he may have presented.

Second, appellant again fails to establish that he sought an evidentiary hearing to present testimony by respondents on the issue of "mutual intent." His only citation to the record is to a notice he issued prior to the hearing regarding his intent to present the testimony of an insurance agent. Assuming he intended to cite the notice he sent at the same time—which stated his intent to solicit respondents' testimony—this notice referred only to matters related to respondents' purportedly unpermitted alterations to their premises, without explanation of the purported significance of this testimony. Appellant also does not cite any legal authority indicating the superior court (or the arbitrator) had any sua sponte duty to do anything more than it did in the absence of such a request under the circumstances. The arguments are properly disregarded. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

Third, as we have repeatedly said, we find no merit in appellant's contentions that respondents' attorney acted inappropriately.

Fourth, appellant's contentions that he is entitled to relief because respondents' attorney somehow acted fraudulently during the arbitration in establishing appellant had engaged in "actionable wrongs" under the TICA fail because they are conclusory and unsupported by any meaningful legal or factual citations. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379; *Stanley*, *supra*, 10 Cal.4th at p. 793.) *Hotels Nevada v. L.A. Pacific Center, Inc.*, *supra*, 144 Cal.App.4th at pages 762 to 766, the one case appellant cites, involved denial of *a petition to compel*

34

arbitration based on the unverified pleadings of the party opposing the petition, after the court observed that possible material factual conflicts existed between the parties. The appellate court held that, given this observation, the superior court should have conducted an evidentiary hearing before so ruling. That case is inapposite here, where the superior court made no such observation and appellant has not established that he made any presentation on the issue below that merited further attention.

In short, appellant does nothing to establish that the superior court erred by rejecting his contentions that the arbitration award was somehow obtained by fraud, corruption, or undue means. Under the circumstances, the superior court had no duty to consider appellant's claims that he did not commit any "actionable wrongs" under the TICA. These matters were determined by the arbitrator, and the court had no authority under section 1286.2 to reconsider them once decided. (§ 1286.2; *Moncharsh*, *supra*, 3 Cal.4th at p. 13 [citing "the general rule that an arbitrator's decision is not ordinarily reviewable for error by either the trial or appellate courts"].)

### VI. *Appellant Does Not Establish Provisions of the TICA Are Unconscionable or Against Public Policy*

**A. *Appellant's Unconscionability Claim***

Appellant next argues, based on the adhesion contract analysis in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, that respondents' attorney's view that the TICA applies to the parties after the condominium project "amounts to the rewriting of the parties' agreements," and that the attorney's "imposition of this 'new contract' on [appellant] is tantamount to an adhesion contract." He complains the parties had unequal bargaining power as they attempted to resolve their issues between them because respondent Coombs was an investment banker while appellant was an unemployed public school teacher, and respondents' attorney imposed his interpretation of the conflicting agreements on appellant, wrote the mediation requirement out of the TICA, and forced the TICA attorney fee provision on appellant, violating professional rules of conduct and the Civil Code in doing so.

35

There are numerous reasons why appellant's unconscionability claim fails. First and foremost, we agree with respondents that on its face, the argument is nonsensical. Appellant in effect argues that three years after the parties entered into the TICA, respondents' attorney, by advocating respondents' interpretation of the TICA, somehow created a new, unconscionable agreement between the parties. Appellant cites to nothing, either in the record or in the law, that supports such a proposition, and does not explain how respondents' attorney could have done so without appellant's agreement to a new contract. The argument is fatuous. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

**B. *Appellant's Public Policy Claim***

Appellant argues that the TICA agreement is in conflict with California's "well-established policy favoring arbitration as a speedy and inexpensive means of settling disputes." (*A.M. Classic Construction, Inc. v. Tri-Building Development Co.* (1999) 70 Cal.App.4th 1470, 1474.) According to appellant, the mandatory arbitration provision, coupled with the attorney fee provision, "create a financial incentive to litigate," and respondents' attorney manufactured "actionable violations" in order to generate fees. Appellant further contends that, without the right to discovery under the TICA, he could not show that respondent Coombs and respondents' attorney had agreements regarding his fees that further encouraged the attorney to aggressively pursue litigation.

Appellant also argues that he was deprived of his real property without due process of law when he was ordered to sell his condominium pursuant to the "forced sale" provision of the TICA. He contends private contracts that violate public policy are unenforceable, that California courts refuse to uphold contractual terms that require a party to forego unwaivable statutory rights on public policy grounds, and that he did not agree to waive his right to a jury trial, discovery, or appeal with respect to the sale of his condominium.

Finally, appellant argues that the arbitrator's award of the entire cost of the arbitration filing fees against him "violates the public policy of sharing costs under section 1284.2," and violates the public policy of fee waivers for indigent litigants.

36

Appellant's arguments are all conclusory and without meaningful factual or legal support. Although he does cite case law here and there in claimed support of his arguments, he does not explain this case law or its relevance to the present case. He does not provide meaningful citations to the record to support his factual contentions, indicate he raised these issues below, or identify from what ruling he appeals. The arguments are properly disregarded. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

## VII. *Appellant Does Not Establish His Claim of Fraud in the Execution*

Finally, appellant argues that respondents' attorney engaged in fraud in the execution of the TICA, based on much the same argument appellant made regarding his unconscionability claim. That is, appellant contends respondents' attorney's "interpretation of the [TICA] coupled with the fact of condo-conversion, amounts to a rewriting of the original agreement." Appellant contends that the attorney, by doing so, somehow engaged in fraud in the execution of the TICA and/or the CC&Rs (it is difficult to tell what contracts are implicated in his claim).

Passing over the fact that appellant's fraud in the execution claim does not make sense, we fail to see how, after the parties entered into their agreements, respondents' attorney, by advocating respondents' interpretation of the TICA, somehow created a new agreement between the parties. Appellant cites to nothing, either in the record or in the law, that supports such a proposition, and does not explain how respondents' attorney could have done so without appellant's agreement to a new contract. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

In this same section, appellant claims respondents' attorney engaged in a "smear campaign" against him by referring to appellant as a vexatious litigant. He contends this campaign "evinces bad faith and improperly sought to prejudice the court and the arbitrator." Once more, he does not cite any meaningful citations to the record or law in support of this vague argument, nor identify what error was made below in light of this purported "smear campaign." Therefore, we disregard these contentions. (*In re S.C.*,

37

*supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

The parties raise a number of other issues, which we need not discuss in light of our conclusions here. In addition, appellant raises issues for the first time in his reply brief without good reason shown, such as regarding respondents' contentions about mediation in their petition to compel, what differences constituted sharply conflicting factual disputes between the parties so as to justify an evidentiary hearing, and what questions were raised by respondents' purported fraud regarding their unpermitted alterations to their premises. We disregard these arguments because we do not consider points raised for the first time in a reply brief without good reason shown for the failure to present them before. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3.)

## DISPOSITION

The judgment is affirmed in its entirety. Respondents are awarded costs of appeal.


_____

Richman, J.


We concur:


_____

Kline, P.J.


_____

Haerle, J.